Cora Smith, Appellee, *vs.* Charles P. Treat, Appellant.

*Opinion filed June 18, 1908.*

1. Appeals and errors—*whether agent had authority to waive forfeiture of contract is a question settled by judgment of Appellate Court.* Whether the agent of a vendor in a contract for the sale of land had authority to waive the right to forfeit the contract for delay of the vendee in making payments is a mixed question of law and fact, which is settled by the judgment of the Appellate Court.

2. Contracts—*when vendor cannot forfeit contract without notice to vendee.* A vendor in a contract for the sale of land, who by his course of dealing with the vendee has led the latter to believe that the provision of the contract concerning a forfeiture for not making payments when due will not be insisted upon, cannot forfeit the contract without giving notice to the vendee, to give her an opportunity to pay what is due.

3. Same—*when vendee may recover money paid on contract for sale of land.* If, while a contract for the sale of land is still in force, the vendor conveys the land to a third person, such conveyance, if assented to by the vendee, effects a rescission of the contract as by mutual consent, and the vendee is entitled to recover the purchase money she has paid upon the contract, with legal interest.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. Ben M. Smith, Judge, presiding.

This is an action in assumpsit brought by the appellee, against the appellant, in the superior court of Cook county. The appellee on April 20, 1890, purchased from appellant twenty lots in the city of Chicago and twenty contracts were entered into by the parties evidencing the purchases, and of these five are involved in this case. The contracts, which are identical except in the descriptions of the lots, are as follows:

"Articles of agreement made this twentieth day of August, in the year of our Lord one thousand eight hundred and ninety, between Charles P. Treat, of the city of Chi-

cago, in the county of Cook, State of Illinois, party of the first part, and Cora Smith, of Chicago, Cook county, Illinois, party of the second part:

"*Witnesseth:* That the party of the first part, at the request of the party of the second part and in consideration of the money to be first paid and the covenants as herein expressed to be first performed by the party of the second part, hereby agrees, upon the surrender of this contract, to sell and assure to the said party of the second part, by a good and sufficient warranty deed, all that certain lot and parcel of land in the city of Chicago, county of Cook and State of Illinois, (here follows the description of the particular lot,) with the privileges and appurtenances thereunto belonging or in anywise appertaining.

"And the said party of the second part, in consideration of the premises, hereby agrees to pay to the said party of the first part, or his attorney, executors, administrators or assigns, at his or their office in the city of Chicago, in the State of Illinois, the sum of four hundred ($400) dollars, payable as follows, viz.: Ten dollars ($10) cash in hand and seven dollars ($7) or more dollars on the twentieth day of September next, and the sum of seven dollars ($7) or more dollars at the end of each and every period of one month thereafter until the whole sum of four hundred ($400) dollars shall have been fully paid, with interest at the rate of six per cent per annum from the date hereof, said interest to be paid (on the whole sum remaining unpaid) semi-annually and at the place specified above for the payment of the several installments, as aforesaid.

"And it is hereby further agreed by and between the parties hereto, that all buildings and other improvements which now are or hereafter may be placed upon the said premises shall remain and not be removed therefrom and shall be regarded as and taken to be a part of the realty, and shall be held by said party of the first part, his heirs, executors, administrators and assigns, as security for the

prompt and faithful payment of each and all the above mentioned sums of money; and also that he will well and faithfully, in due season, pay or cause to be paid all taxes and assessments, ordinary or extraordinary, that may be levied, assessed or imposed upon said premises or appurtenances, or any part thereof, subsequent to the year 1889.

"And it is mutually covenanted and agreed by and between the parties hereunto, that in case the said party of the second part shall make default or fail to make any of the payments above mentioned at the time and times above limited, (the said time and times of payment being hereby declared to be an essential part of this contract,) or shall fail to perform punctually any of the covenants and agreements herein mentioned at such time or times and for ten days thereafter, then in such case this agreement, and all the covenants and agreements on the part of the said party of the first part herein contained, shall, at the option of the said party of the first part, his representatives or assigns, be and are declared null and void and no longer binding, and all the right or interest, either in law or equity, of the said party of the second part shall cease and be determined, and all the payments which shall have been made hereon or in pursuance hereof, and all buildings and other improvements which are now or shall hereafter be placed on said premises, shall be absolutely and forever forfeited to said party of the first part, and he shall have the right to re-enter and take possession, or, at the election of the said party of the first part, his representatives or assigns, the covenants and liability of the said party of the second part shall continue and remain obligatory upon the said party of the second part and may be enforced, and the said consideration money, and every part thereof, be collected by proper proceedings, in law or equity, from the said party of the second part, her heirs, executors, administrators or assigns.

"The said party of the second part further agrees that in case she shall not make the payments above named on

the days they are, respectively, made payable, she will pay interest on any payment or part of payment which shall remain unpaid after due, at the rate of eight per cent per annum until paid. But nothing herein contained shall be construed as a waiver of the right of said party of the first part to declare this contract forfeited for non-payment, as hereinbefore provided.

"In witness whereof the parties to these presents have hereunto set their hands and seals the day and year first written above."

At the time the contracts were made appellant was not in Chicago but he maintained an office there, which was at that time in charge of Henry C. Decker, who executed the contracts in appellant's name. In 1891 Sewell T. Collins was employed in appellant's office and remained there until 1903. For the greater portion of the twelve years in which Collins was in the office he was in sole charge of it and appellant occupied his time in London and New York. The appellee made payments on each of the lots as required by the several contracts, until June 9, 1891. On June 24, 1893, she assigned one of the contracts and retained nineteen. In November, 1893, appellee requested appellant to take back fourteen of the lots and to credit her on the five retained by her with the payments she had made on the fourteen, and appellant did so. When this was done appellee was credited with $341.16 paid on each of the five lots, and this sum included all regular payments, with interest, taxes and special assessments, up to November 27, 1893. No further payments have been made by appellee, and the last installment came due in 1895. On January 5, 1901, Collins, in obedience to appellant's verbal instructions, marked the five contracts forfeited. Appellee had no notice that the contracts had been forfeited until August 3, 1901, when she was notified, in writing, of the forfeiture. On October 22, 1902, the five lots were conveyed to Homer E. Gross. Appellee filed her declaration in this case February 14, 1905,

and she seeks to recover payments made by her under the contract on the lots in question, with interest thereon from the date of the conveyance. A jury was waived in the superior court, and upon trial the court found the issues for appellee and rendered judgment in her favor for $2057.19. Upon appeal the Appellate Court for the First District affirmed the judgment of the superior court, and by his further appeal appellant has brought the record to this court for review.

Huff & Cook, and Hamlin & Boyden, for appellant.

James S. Wight, and Robert I. Gregg, (Frederick Peake, of counsel,) for appellee.

Mr. Justice Vickers delivered the opinion of the court:

The theory upon which appellee seeks to recover payments made under these contracts is, that there was, in effect, a rescission of the contracts by the conduct of the parties. Appellee insists that appellant had waived his right to declare a forfeiture of the contracts because payments were not promptly made. The facts relied upon to establish such waiver consist of numerous letters written by appellant's agent (Collins) to appellee requesting and urging payments long after appellee had made her last payment and after all of the installments under the contract were due, and the acceptance by appellant of installments, on numerous occasions, long after the right to declare a forfeiture for their non-payment had accrued. It cannot be denied that the correspondence and conduct of Collins in regard to these contracts furnish satisfactory evidence of an intention to waive the forfeiture clause in the agreements. This conclusion is not seriously controverted by appellant. Appellant seeks to avoid the effect of the waiver by insisting here that there is no sufficient evidence of the authority of Collins to waive a clause in the written contract. This con-

tention raises a mixed question of law and fact, and involves a consideration of the evidentiary facts as well as the ultimate deductions therefrom, hence falls within the class of questions the determination of which by the Appellate Court is final. (*Moerschbaecher* v. *Royal League,* 188 Ill. 9; *Ætna Life Ins. Co.* v. *Sanford,* 200 id. 126.) Such has been the uniform construction of section 90 of the old Practice act in numerous analogous cases. *Sun Mutual Ins. Co.* v. *Saginaw Barrel Co.* 114 Ill. 99; *American Exchange Nat. Bank* v. *Chicago Nat. Bank,* 131 id. 547; *Hamburg-American Packet Co.* v. *Gattman,* 127 id. 598; *Alphin* v. *Working,* 132 id. 484; *Phœnix Ins. Co.* v. *Johnston,* 143 id. 106; *Coverdale* v. *Royal Arcanum,* 199 id. 649.

The question of the extent of Collins' authority, as well as the question whether there was a waiver, is settled adversely to appellant by the affirmance of the judgment by the Appellate Court. The only questions that are open for our consideration upon this record relate to the rulings of the court upon certain propositions of law.

At the request of appellee the court held the following propositions of law applicable to the decision of the case:

"That if, while the contracts introduced in evidence were still in force, the defendant conveyed the real estate mentioned therein to a third party, such conveyance, if assented to by the vendee, plaintiff herein, effected a rescission of said contracts, and such rescission would be by mutual consent, and entitle the vendee, plaintiff aforesaid, to a return of the purchase money paid under said contracts.

"That if there was a rescission of the contracts introduced in evidence, as set forth in proposition 5, the plaintiff is entitled to recover of the defendant the total amount paid by her thereon, together with interest thereon at the rate of five per cent per annum from the date of said rescission."

Appellant assigns error upon the ruling of the court in its holding upon these propositions. These propositions

state the law correctly as laid down by this court in *Bannister* v. *Read*, 1 Gilm. 92, *Baston* v. *Clifford*, 68 Ill. 67, and *Lake Shore and Michigan Southern Railway Co.* v. *Richards*, 152 id. 59. In the *Read case*, above cited, this court, on page 99, said: "Although one party to a contract may not, alone, rescind it, he may, nevertheless, by neglecting or refusing to perform it on his part, place it in the power of the other party, where he is not also derelict, to avoid it, or not, at his pleasure. The breach of one party may in such case be treated by the other as an abandonment of the contract, authorizing him, if he choose to do so, to disaffirm it, and thus the assent of both parties to the rescission of the contract is sufficiently manifested, that of the one by his neglect or refusal to perform his part of the contract, and of the other by his suing, not for such breach, but for the value of any act done or payment made by him under the contract, as if it had never existed,"—citing cases. The above language was quoted and approved in the case of *Baston* v. *Clifford, supra.*

Appellant complains that the court refused to hold propositions 15, 17, 19 and 20 submitted by appellant. In the main these propositions relate to the right of a vendor to declare a forfeiture of a contract to sell real estate and retain all payments made thereon in cases where no question of waiver or estoppel is involved. Assuming that the evidence before the trial court established a waiver on the part of appellant, the propositions submitted, in so far as they declare the law applicable to a case where the question of waiver was not involved, were properly refused. The only other matter included in the refused propositions is contained in the nineteenth, which relates to the right of the vendor to declare a forfeiture without notice. This proposition is not applicable to the case in hand, for the reason already given that it entirely fails to take into account the effect of a waiver upon the rights of the parties. If appellant, by his course of dealing with appellee, had led her to

believe that a forfeiture would not be insisted upon, it would be manifestly inequitable, as well as in violation of the legal rights of appellee, after years of repose and confidence, to suddenly reverse his course of dealing and declare a forfeiture without giving appellee notice and an opportunity to pay the small balance due appellant, and thus protect herself from serious loss which would otherwise follow from appellant's unexpected change of attitude. There was no error in refusing this proposition of law. *Monson* v. *Bragdon,* 159 Ill. 61; *Eaton* v. *Schneider,* 185 id. 508.

The last proposition of law to which appellant excepts may be disposed of by simply referring to the fact that there was no evidence in the record upon which such proposition could be predicated. This proposition relates to the right of the vendee to call upon the vendor for a deed without actual payment of all the purchase money. The contract being in force and executory at the time appellant conveyed the property to a third party, thereby violating his contract and putting it out of his power to convey to appellee, no question can arise with respect to the right of appellee to demand a deed. The demand for and the refusal to deliver the deed were not a condition precedent to appellee's right to recover payments made, on the theory of a rescission of the contract.

There was no error in the rulings of the court upon the propositions of law submitted.

The judgment of the Appellate Court for the First District is affirmed.                                *Judgment affirmed.*

Mr. JUSTICE CARTER took no part in the decision of this case.