(April 13, 1925.)

M. D. SEELEY, Appellant, v. SECURITY NATIONAL
BANK OF FAIRFIELD, a Corporation, SIG MOR-
RELL, D. K. HENDRY and MAY P. HENDRY, Hus-
band and Wife, Respondents.

[235 Pac. 976.]

VENDOR AND PURCHASER—CONTRACT—PAYMENTS—WAIVER OF STRICT
PERFORMANCE — CROP MORTGAGE — ESTOPPEL — ADMISSION OF EVI-
DENCE—OBJECTIONS TO—RESERVED RULING—EFFECT—APPEAL AND
ERROR—REVIEW—ADMISSION OF EVIDENCE—INSUFFICIENCY—FIND-
INGS AND CONCLUSIONS.

1. One who sells land upon contract subject to a mortgage
which he has assumed and agreed to pay, and which the vendee
assumes and agrees to pay, by accepting a part of one of the
payments due him and thereafter consenting to the vendee's giving
a crop mortgage upon crops sown and to be thereafter sown, to
secure funds to make a payment due upon the assumed mortgage,
will be held to have waived strict performance of the contract and
has not a right to declare a forfeiture thereafter for previous
default without giving reasonable notice to the vendee of his
intention so to do, and a reasonable opportunity to make the de-
linquent payment.

2. One who tacitly encourages an act to be done and receives
and accepts the benefits thereof cannot afterwards exercise his
legal right in opposition to such consent and acceptance of benefits
if his conduct or acts of encouragement induced the opposite party
to change his position so that he will be pecuniarily prejudiced
by the assertion of such legal right.

3. The practice of a trial court in reserving a ruling on an
objection to evidence offered, and admitting the evidence, is to
be condemned. However, evidence received subject to objection,
whether a ruling is reserved or the privilege given of moving to strike
it out later, is before the court, and in the absence of a subsequent
ruling excluding such evidence, it will be deemed to have been ad-
mitted.

4. Judgment in a cause tried by the court without a jury will
not be reversed for error in the admission of evidence where the
decision does not depend upon the evidence admitted, and is sup-
ported by ample evidence properly admissible.

5.   A judgment will not be reversed for the insufficiency of the evidence to sustain a particular finding of fact or conclusion of law when there is ample evidence to sustain other findings of fact and conclusions of law which of themselves are sufficient to support the judgment.

APPEAL from the District Court of the Fourth Judicial District, for Camas County.   Hon. H. F. Ensign, Judge.

Action to enjoin the foreclosure of a crop mortgage. Judgment for defendants.   *Affirmed.*

James & Ryan, for Appellant.

Where the vendor forfeits the contract, the crops then growing on said land pass to such vendor even as against the holder of a mortgage on such crops executed before the forfeiture.   In such case the mortgagee takes subject to the right of the vendor under his contract.   (*Union Farm Land v. Isaacs,* 106 Wash. 168, 179 Pac. 84.)

Where a tenant by a breach of the terms of his lease forfeits his lease and his landlord re-enters, the landlord is entitled to the growing crops on the land.   (24 Cyc. 1071, subd. D (see also notes) ; 8 R. C. L.. p. 365.)

Where a lessee, who had given a mortgage on crops to be planted in the future, terminates his lease before said crops are planted, no lien of the mortgage attaches to the crops planted on the land by other persons.   (C. S., sec. 6373; *Gamman v. Bull,* 86 Iowa, 754, 53 N. W. 340; *Green v. Consolidated Wagon & Machine Co.,* 30 Ida. 359, 164 Pac. 1016; 11 C. J., pp. 431, 432, sec. 41.)

The validity of a crop mortgage given by a tenant depends upon the continuance of the lease, and if the lease is terminated before the crops are sown, or after they are sown but before maturity, the mortgage is void.   (16 R. C. L., pp. 1139, 1140, sec. 660; 15 Ann. Cas. 1033; *Woody v. Wagner,* 89 Wash. 429, 154 Pac. 819; 24 Cyc. 1071 (D) ; *Gregg v. Boyd,* 53 N. Y. 386, 69 Hun, 588, 23 N. Y. Supp. 918.)

The relation between a vendor and vendee under an executory contract to purchase real estate is analogous to the

relation existing between a landlord and tenant in so far as the right to claim crops is concerned. (39 Cyc. 1627; *Lynch v. Sprague Roller Mills,* 51 Wash. 535, 99 Pac. 578.)

Frawley & Koelsch and R. M. Angel, for Respondents.

"Findings of fact by the court on evidence substantially conflicting will not be disturbed on appeal." (*Smith v. Faris-Kesl Construction Co.,* 27 Ida. 407, 150 Pac. 25; *Capital Lumber Co. v. Saunders,* 26 Ida. 408, 143 Pac. 1178.)

Where a contract for the sale of real estate makes time of the essence and provides for a forfeiture of the vendee's rights for failure on his part to make payments at certain times, a continued course of conduct on the part of the vendor in failing to declare a forfeiture, thereby leading the vendee to believe that the vendor waives a strict compliance with the terms of the contract, works a waiver of the vendor's rights to declare a forfeiture, unless and until he gives the vendee reasonable notice of his intention to do so and a reasonable opportunity to make the delinquent payments. (*Sullivan v. Burcaw,* 35 Ida. 755, 208 Pac. 841; 29 Am. & Eng. Ency. Law, 2d ed., 673; *Quinn v. Olsen,* 34 Minn. 422, 26 N. W. 233; *Wadham v. McVicar,* 115 Wash. 503, 197 Pac. 616; *Luther v. Hekking,* 110 Kan. 478, 204 Pac. 523.)

Erroneous rulings in the admission of evidence in an equity case are generally not sufficient to justify a reversal of the case. (*Nelson-Bennett Co. v. Twin Falls Land & Water Co.,* 14 Ida. 5, 93 Pac. 789; *Spongberg v. First National Bank of Montpelier,* 15 Ida. 671, 99 Pac. 712.)

"Where a person tacitly encourages an act to be done, he cannot afterwards exercise his legal right in opposition to such consent, if his conduct or acts of encouragement induced the party to change his position, so that he will be pecuniarily prejudiced by the assertion of such adversary claim." (*Leaf v. Reynolds,* 34 Ida. 643, 203 Pac. 458; *Exchange State Bank v. Taber,* 26 Ida. 723, 145 Pac. 1090; *Shafer v. Killpack,* 53 Utah, 468, 173 Pac. 948; *Lillard v. Board of County Commrs.,* 102 Kan. 822, 172 Pac. 518; *Lake v. O'Brien,* 54 Cal. App. 543, 202 Pac. 158.)

TAYLOR, J.—This action was brought by appellant Seeley to contest and enjoin the foreclosure by respondent Security National Bank of a chattel mortgage upon a crop raised on the lands involved in a contract of purchase between appellant and respondents Hendry and wife. Respondent Morrell is the sheriff who was proceeding to foreclose the mortgage under notice and sale, being in possession of the crop after it was cut and harvested.

Respondents answered denying title in the appellant, setting out certain facts with relation to the loan and mortgage and its execution, and alleging that the appellant was estopped by the facts and by his conduct, acts and representations from claiming any interest in the crop adverse or superior to the lien of the Security National Bank, and from questioning, denying or contesting the validity of the chattel mortgage. The court found in favor of the respondent bank upon all questions, and entered judgment against the appellant. The appeal is from that judgment.

Appellant's assigned errors may be grouped as follows: (1) error in reserving rulings upon contested points, and in not thereafter making any ruling upon the points reserved; (2) error in the admission of evidence; (3) errors in the findings of fact and conclusions of law; and (4) insufficiency of the evidence to sustain the findings and conclusions.

Most of the material facts are either admitted or there is a direct and substantial conflict of the evidence with respect thereto. As to the evidence in which there is a conflict, the court might well have found, as it did, in favor of respondents, and those findings will not be disturbed. (*Smith v. Faris-Kesl Construction Co.*, 27 Ida. 407, 150 Pac. 25; *Olson v. Caufield*, 32 Ida. 308, 182 Pac. 527.) For a full understanding of the case and to make a concise statement, we will combine those facts found by the court upon evidence in which there is no controversy and those which might readily be found from the conflicting evidence in favor of respondents.

40 Idaho—37

The appellant had purchased this land under a contract by which he had agreed to assume and pay what may be called the Naser mortgage on the property. On May 15, 1920, he sold it upon contract to respondent Hendry. By the terms of the contract, Hendry paid $5,000 in cash, and agreed to pay $5,000 on October 27, 1920, $5,000 on October 27, 1921, and $2,000 on October 27, 1922, and to assume and pay the Naser mortgage, then amounting to $9,000, upon which a payment of $2,000 would become due January 1, 1921. Time was made "an essential element," and forfeiture, at the option of Seeley, was provided for in the event of default on the part of the vendee, with a further recital that " .... Upon the forfeiture of this agreement as aforesaid the relation of landlord and tenant shall immediately exist between the said parties hereto."

This agreement, with a deed to the premises, was placed in escrow with the respondent Security National Bank on May 15, 1920. The respondent Hendry went into immediate possession of the lands and personal property, and planted some thirty acres of wheat in the fall of 1920. When the $5,000 payment became due October 27, 1920, Hendry was unable to pay the amount, but did pay $1,900 about November 1, 1920. On November 19, 1920, Hendry and Seeley went to the bank and drew down the contract and deed, and they were turned over to Seeley. There is a conflict of evidence as to the reasons for this, Seeley testifying that Hendry stated that he could not meet the payments and that they might as well draw the papers down. Hendry testified that Seeley assigned as the reason for taking the papers down that thereby the Utah-Idaho Land & Investment Company, brokers in the sale, would be prevented from gaining possession of them and enforcing payment of their claim for a balance due, which payment, it was stated in the agreement, should be made to them from moneys paid thereunder. Appellant contends that this was a revocation and termination of the contract.

Seeley and Hendry negotiated over a new contract to be drawn in such a way that Hendry could, by reduction of the

annual payments, meet them. These negotiations extended
at least from November, 1920, through the month of
February, 1921. They talked a number of times of the pay-
ment becoming due to Naser on January 1, 1921. Seeley
suggested that he would write Naser and see if he could get
an extension of time on the mortgage. Hendry received a
letter from Naser, and told Seeley in the month of December,
1920, that Naser would insist on his payment, and that he
(Hendry) was negotiating at the bank for a loan. Hendry
said to Seeley, "We can get the money at the bank on next
year's crop," and Seeley replied, "If you can raise it, raise
it. I cannot get any money." When the payment of $2,000
came due upon the Naser mortgage in January, 1921, Hendry
was unable to pay it, and so was Seeley. In the early part
of January, 1921, one West, an officer of the bank, came
to the ranch with Seeley and walked over it. West had
never been there before. Later that evening Seeley told
Hendry, "Mr. West is going to let us have some money."
Hendry answered, "Now, Max, that means a crop mortgage
if we get the money," and Seeley replied, "Get the money."

Seeley and Hendry went to the bank together. Seeley
asked one Haynie, then cashier who had assumed his duties
only about January 1, 1921, if he was going to take care of
this loan to Hendry. He continued to talk to Haynie while
Hendry and one Housman, president of the bank, talked in
the same room but out of their hearing. Housman an-
nounced that as West had commenced the loan he had better
make it. The loan, in the sum of $2,175, was made shortly
thereafter and on January 21, 1921, to Hendry by West,
acting for the bank, and was secured by the mortgage in
question, executed by Hendry and wife, and covering the
following crops of 1921: "30 acres growing wheat, 60 acres
growing alfalfa, 100 acres wheat, 10 acres barley, 10 acres
oats to be planted, this spring, 1921. . . . . "

Two thousand dollars of this money was immediately paid
by Hendry to Naser upon the Naser mortgage, the $175 being
interest on the chattel mortgage which bore no interest until
due. Seeley knew that the money was borrowed and the

mortgage given, and that this money was paid upon the Naser mortgage.

On March 18, 1921, Seeley caused to be served upon Hendry a notice that he had failed to pay some $3,478, including interest, due upon the contract in October, 1920, and giving him five days in which to make the payment. Again, on March 28, 1921, Seeley caused to be served another written notice reciting the previous notice and the failure of Hendry to make payment, and declaring the contract at an end. These notices did not pretend to declare a forfeiture of the contract for any default of Hendry occurring after the making of the chattel mortgage. After the service of these notices, Seeley told Hendry to pay no attention to them; that they were a mere matter of form; that he could still live on the place; that what he (Seeley) wanted was possession; and that he would not turn Hendry out in the street if he would surrender the place back to him.

The next day, March 29, 1921, Seeley presented and demanded that Hendry sign an agreement reciting ''That whereas, that certain tract of land heretofore bought by the said party of this second part (Hendry) from the said party of the first part (Seeley) has reverted to the said party of the first part by reason of default in the making of payments due on the purchase price thereof and the said party of the first part has therefore now become the owner thereof together with the personal property mentioned in the contract by the terms of this agreement, the said party of the second part hereby enters into the employ of the said party of the first part as foreman on said tract of land or ranch, at the agreed and stipulated salary of One Hundred ($100) Dollars per month, for the season of 1921, . . . . and for the further and agreed consideration of the privilege on the part of the said party of the second part of running and pasturing the livestock now belonging to said party of the second part . . . . and feeding the same on and from the said premises without charge during the life of this contract.''

This agreement, which was signed by the parties, further provided that Seeley should ''pay for such help and assist-

ance on the said farm as shall be mutually agreed upon as necessary''; that Seeley should list the farm for sale at the price of $125 per acre, and in case of the consummation of a sale should receive $21,500 from the purchase price, out of which $21,500 he should pay and care for the mortgages against the premises held by Naser and Nickolaisen, should allow Hendry $7,000, should ''pay that certain crop or chattel mortgage of $2,175 now against the crop for the season of 1921, which sum is to be paid before the $7,000 above mentioned,'' and pay a brokerage commission of five per cent of the purchase price, and then, if there were any money remaining, it was to be divided equally between Seeley and Hendry; and that the agreement should expire November 1, 1921. Hendry remained thereafter on the land, and was upon the land at the time of this chattel mortgage foreclosure. This written agreement contained no recital as to who should furnish the seed for, or who should seed, the crop planted in the spring of 1921. Seeley did not have the money to buy seed and wanted Hendry to furnish it. Hendry furnished the seed and sowed and cultivated the crop in controversy with some slight assistance from Seeley in the form of personal labor.

The evidence of Seeley is wholly unreliable. He even denies his presence at the bank at a conversation or at all, which is testified to by three witnesses for respondents. The lower court may well have concluded that he was not testifying to the truth. It would almost seem that Seeley had his contract of March 29, 1921, drawn in an attempt to fit it to the decision of *Green v. Consolidated Wagon & Machine Co.,* 30 Ida. 359, 164 Pac. 1016, and that he endeavored so to govern his conduct as to establish a state of facts to defeat the mortgage. In fact, the lower court may well have believed the testimony of Hendry, admitted without objection and undenied by Seeley, to the effect that Seeley had said: ''It looked like the bank was trying to break us both by insisting on the money out of this crop, and it was up to us to protect ourselves.''

The case of *Green v. Consolidated Wagon & Machine Co.,* *supra,* is not in point or in conflict with our holding herein, for in that case the crops sown the previous fall were explicitly excluded from the contest over the foreclosure of the mortgage, and there were no equities, relations or dealings between the owner of the land and the mortgagee which would estop the owner from invoking the general rule that, upon the forfeiture of a contract to purchase lands, growing crops, unless excepted or reserved, become the property of the vendor, and are not subject to a chattel mortgage which has been taken with knowledge that the contract might be forfeited. The cases cited by appellant all go to support the general rule that, on forfeiture or relinquishment of a contract of purchase or lease, growing crops go with the land, even to the avoidance of a crop mortgage; but in all of them can be found expressions that this is the rule in the absence of reservations or exceptions, and in many that this rule is subject to the terms of the contract.

Appellant contends that the bank had a copy of the contract between Seeley and Hendry and knew that Hendry was in default in the October, 1920, payment and had not made the payment to Naser, and that it had an opinion of its attorney upon the contract, and took the mortgage with notice of the terms of the contract and the rights of Seeley to declare a forfeiture thereof. But the bank also knew that this money was borrowed to pay on the Naser mortgage, an obligation of Seeley's and which as between Seeley and Hendry was not an obligation of Hendry's under his contract if his contract had been forfeited, no matter what claim Naser might make that Hendry had assumed and agreed to pay the mortgage, and that Seeley consented to the mortgage for that purpose.

The recital of the contract that, upon forfeiture, "the relation of landlord and tenant shall immediately exist" was as much a part of the agreement as any other, and is material for consideration in connection with the claims of Seeley. If, as contended by Seeley, the contract was forfeited in November, 1920, then the relation of landlord and tenant began at that time, and certainly the evidence shows

that Hendry remained in possession with the consent of Seeley until the first and second notices were served on March 18, 1921, and March 28, 1921, respectively.  A tenancy at will can be terminated only by a thirty days' notice to quit.  No such notice was served at any time.  If the relation be construed as that of a tenant holding over and retaining possession of agricultural lands for more than sixty days after the expiration of his term without any demand of possession or notice to quit by the landlord, he would be deemed to be holding by permission of the landlord and entitled to hold under the terms of the lease for another full year.  (C. S., sec. 7322.)  It is not material whether the relation was that of landlord and tenant or vendor and vendee under a contract subject to forfeiture but upon which strict forfeiture had been waived, for the acts of Seeley would work an estoppel as fully no matter which relation existed.

By accepting a part payment in November, 1920, and permitting Hendry to make the payment on the Naser mortgage in January, 1921, Seeley waived strict performance and the right to declare a forfeiture without giving Hendry reasonable notice of his intention to do so and a reasonable opportunity to make the delinquent payment.  (*Sullivan v. Burcaw*, 35 Ida. 755, 208 Pac. 841; *Luther v. Hekking*, 110 Kan. 478, 204 Pac. 523; *Wadham v. McVicar*, 115 Wash. 503, 197 Pac. 616; *Quinn v. Olson*, 34 Minn. 422, 26 N. W. 230.)

The supreme court of the United States, in *Swain v. Seamens*, 9 Wall. (U. S.) 254, 19 L. ed. 554, said:

"Where a person tacitly encourages an act to be done, he cannot afterwards exercise his legal right in opposition to such consent, if his conduct or acts of encouragement induced the other party to change his position, so that he will be pecuniarily prejudiced by the assertion of such adversary claim."

This court has approved of this doctrine in the following cases: *Leaf v. Reynolds*, 34 Ida. 643, 203 Pac. 458; *Exchange State Bank v. Taber*, 26 Ida. 723, 145 Pac. 1090; *Farber v. Page & Mott Lumber Co.*, 20 Ida. 354, 118 Pac. 664.  See, also, *Shafer v. Killpack*, 53 Utah, 468, 173 Pac.

948; *Lillard v. Board of County Commissioners,* 102 Kan. 822, 172 Pac. 518.

When Seeley told Hendry to make the loan and mortgage, consented to it, and received the benefits by the proceeds being paid to Naser upon an obligation on which he, himself, was liable, with full knowledge that the mortgage had been given, he at least tacitly agreed that the crop named in the mortgage should be raised, and certainly that if it were sown it would be subject to the lien of the mortgage, and he is estopped thereafter to exercise a right of forfeiture, for any default occurring prior to the chattel mortgage, to the detriment of the mortgagee. (10 R. C. L. 694, sec. 22; *First National Bank v. Kissare,* 22 Okl. 545, 132 Am. St. 644, 98 Pac. 433; *Dendy v. First National Bank,* 76 Kan. 301, 91 Pac. 682; *Rothschild v. Title Guarantee & Trust Co.,* 204 N. Y. 458, 97 N. E. 879, 41 L. R. A., N. S., 740.)

Appellant alleges that the court erred in repeatedly reserving its rulings on the admissibility of certain testimony and never thereafter, or at all, passing on such questions, and points out eight instances in which the court did this. We have carefully examined the transcript, and in every instance the ruling was made on the objection of respondents, and the evidence of appellant was received. It would be of little consolation to the appellant that we have also concluded that in almost every instance, the objection should have been sustained.

This practice is to be condemned. Many evil results may follow from it. In *Tarpey v. Veith,* 22 Cal. App. 289, 134 Pac. 367, which, however, was a case where evidence was introduced subject to a motion to strike, but no different in principle, the court used the following language:

"Complaint is made that the trial court failed to rule upon some objections interposed by the defendant to the introduction of certain evidence at several stages of the trial. The foundation of this complaint is to be found in the lower court's cautious, but far from commendable, method of repeatedly ruling against the objections of the defendant, with the privilege of moving to strike out later. While such

method of conducting a trial is ordinarily more conducive to confusion than to a correct conclusion as to the merits of the points presented by an objection, nevertheless it cannot be said that the method pursued in the present case was tantamount to a refusal to rule at all upon the objections as they were made.''

However, the evidence received subject to objection was before the court, and unless a motion to strike was thereafter made and it was stricken, the court's failure to exclude it amounts to a ruling admitting the evidence. (38 Cyc. 1344, sec. e; *McKee v. Bassick Mining Co.*, 8 Colo. 392, 8 Pac. 561; *Croset v. Whelan*, 44 Cal. 200; *German-American Bank v. Manning*, 133 Mo. App. 294, 113 S. W. 251.)

The admission of defendants' exhibits 1 and 5 is assigned as error. These were copies of unsigned contracts made after the complaint was ''lodged in chambers,'' and were inadmissible. Respondents contend that they were only introduced as evidence of the fact that the parties had been repeatedly negotiating for and considering a new contract. They were in the nature of a settlement and compromise. The evidence that prior to suit the parties had negotiated was already in, and the admission of these exhibits was error but not sufficient error to reverse the case in view of the fact that the decision does not depend on their unsuccessful negotiations after the crop was planted, but on what they actually did with relation to the original contract, the mortgage and the crop.

Appellant alleges error in the findings of fact and conclusions of law, and insufficiency of the evidence to sustain them. The findings of fact that Hendry was at all times from May 15, 1920, to the commencement of the action in possession of the land under his contract of May 15, 1920; that he and his wife, at their own expense and by their own labor, farmed, tilled and cultivated the same, and planted, seeded, irrigated, tended and harvested the crops, and at all times were in possession of and owned said crops; that Seeley advised, urged and counseled the bank to make the loan and

receive the mortgage, and led the bank to believe that Hendry was the owner of the crop; that the proceeds were paid to Seeley; and that the crops were and are the property of Hendry and wife, are not wholly and entirely supported by the evidence and are too broad. Some of them are more like conclusions than statements of fact. It is not shown that any representation was made to the bank by Seeley except that Hendry still had an interest in the land and crop, and his willingness that they make the loan to Hendry for him to make the Naser payment, and that they take a crop mortgage. However, Hendry's possession of the land, his furnishing and sowing of the seed, his acts in tending and cultivating the crop, his possession of and title to an interest in the crop, the acts of Seeley with relation to the loan and mortgage, and the payment of the money on the Naser mortgage, were all sufficiently found in other findings and are ample to support the conclusions that this was a valid mortgage and that it attached to the crop when sown, and that Seeley "is by his act and conduct estopped from questioning or contesting the validity of the said chattel mortgage" as against the bank and its foreclosure.

The judgment is affirmed. Costs to respondents.

William A. Lee, C. J., Budge and Givens, JJ., concur.

Wm. E. Lee, J., did not sit at the hearing and took no part in the decision.