(No. 7262.   May 1, 1946.)

JOHN STRINGER, Respondent, v. ALBERT C. SWAN-
STRUM and KATHERINE SWANSTRUM, his wife,
Appellants.

[168 P. (2d) 826.]
Rehearing denied May 25, 1946.

Arthur W. Holden and Jones, Pomeroy & Jones for ap-
pellants.

Ralph L. Albaugh and E. H. Hillman for respondent.

AILSHIE, C.J.—This is an action for specific performance of a contract and option to purchase certain real property situated in Clark county.

The facts are quite fully set forth in the findings of the court quoted hereinafter.

The cause was tried to the court without a jury. Orders denying motion to strike portions of the amended complaint and overruling demurrers to the same were entered. The court concluded that the contract of lease and option to purchase "was and is a valid contract" and respondent "has not forfeited his rights thereunder"; that, by accepting interest payment and payments of mortgage installments and taxes by respondent, appellants "waived strict performance with respect to the time of payment of the indebtedness", and "by advising the plaintiff (respondent) that all they wanted was the interest money, and that they would let him know when they wanted the balance of the purchase price."

The substantial and essential findings of fact and conclusions of law, on which judgment was subsequently entered, are as follows:

"II.

"That on the said 13th day of June, 1942, the plaintiff and the said defendants entered into a written contract of lease and option to purchase by the terms whereof the said defendants demised and leased the premises hereinbefore described 'for the term of two years thereafter in consideration of the sum of $5,000.00, which was paid by the plaintiff to the said defendants at the time of the execution and delivery of said contract.

III.

"That in further consideration of the said sum of $5,000.00 paid by the said plaintiff as aforesaid, it was further covenanted and agreed that the plaintiff should have, and he was therein and thereby given the exclusive option of purchasing said premises at any time prior to the 13th day of June, 1944; that said option agreement provided that upon the exercise of the said option by the plaintiff, he should assume and pay according to the terms and conditions thereof a certain mortgage upon said premises in favor of the Federal Land Bank of Spokane, and thereupon pay to the First National Bank of Dillon, Montana, as escrow agent for the use of the said defendants, a sum of money being the difference between the amount owing on said mortgage and $7,000.00, together with interest on said sum at the rate of five percent per annum from the 13th day of June, 1942.

IV.

"That coincidentally with the execution of said contract the said defendants made and executed their Warranty Deed conveying to the said plaintiff all of the premises hereinbefore described, and the said Warranty Deed, and a copy of said contract were thereupon delivered to the First National Bank of Dillon, Montana, as escrow agent, and the same, together with an Abstract of Title to said property and a Bill of Sale to certain personal property, are now in the possession of said escrow agent.

### V.

"That the plaintiff, upon the execution and delivery of said contract, paid to the defendants the said sum of $5,000.00 and entered into the possession of said premises, and at all times since has been and is now in the possession thereof, and he has duly performed all of the conditions of said lease and option to purchase on his part to be performed.

### VI.

"That the fair and reasonable rental value of said premises from the 13th day of June, 1942, to the 13th day of June, 1944, was the sum of $1500.00; that the fair, just, and reasonable value of said property at the time said contract was entered into was the sum of $12,000.00, and that there has been a slight increase in the value of said property since the execution of said contract.

### VII.

"That the plaintiff, with the knowledge, consent, and acquiescence of the defendants, has paid all of the installments on the said mortgage on said premises in favor of the Federal Land Bank of Spokane that have become due since the execution of said contract, and as follows: $74.36 paid on or about the 16th day of June, 1943; $75.58 paid on or about the 22nd day of January, 1944; $76.83 paid on or about the 12th day of May, 1944, and $76.83 paid on or about the 21st day of June, 1944.

### VIII.

"That on or about the 10th day of July, 1943, the plaintiff, at the request of the defendants, paid to the defendants the sum of $255.00, the same being interest on the sum of $5100.00 at the rate of five percent per annum from the 13th day of June, 1942, to the 13th day of June, 1943, the said sum of $5100.00 being the difference between the mortgage indebtedness and the sum of $7,000.00, and the defendants accepted the said payment of interest pursuant to the terms of said contract; that at the time said payment was made, the defendants informed the plaintiff that all that they wanted was the interest on the indebtedness, and that they would notify the plaintiff when they wanted more money.

## IX.

"That the plaintiff has paid all taxes that have been levied against said property since the execution of said contract.

## X.

"That on the 13th day of June, 1944, the said defendants instructed the First National Bank of Dillon, Montana, the escrow agent, that the balance then due pursuant to the terms of said contract was as follows: 'Principal, $5100.00; interest, June 13, 1943, to June 13, 1944, $255.00; total $5,355.00'; that at said time and place the said defendants instructed the said First National Bank of Dillon, Montana, to deliver the said Warranty Deed hereinbefore referred to, to the plaintiff upon receipt of the said sum of $5,355.00 for the defendants; that on the 14th day of June, 1944, the said defendants verbally instructed the said First National Bank of Dillon, Montana, not to deliver the said instruments to the plaintiff, and a similar notice in writing was mailed to the said First National Bank by the said defendants on the 15th day of June, 1944.

## XI.

"That on the 15th day of June, 1944, the plaintiff, who was then, and for several weeks prior thereto had been, at Ontario, in the State of Oregon, by and through his agent, Jim Anderson, offered to pay the defendants the balance remaining unpaid under said contract, but the said defendants refused to accept the same; that on the 16th day of June, 1944, the said plaintiff notified the said defendants by telegram that the balance of said purchase price would be paid to the defendants as soon as plaintiff's attorney had examined the said Warranty Deed, or if the defendants desired, the plaintiff would be at Spencer, Idaho, on the 25th day of June, 1944, and pay the money to them directly; that the said defendants received the said telegram, but they did not reply thereto.

## XII.

"That on or about the 20th day of June, 1944, the plaintiff caused a check to be delivered to the First National Bank of Dillon, Montana, as escrow agent, in the sum of $5,364.10, the same being the principal balance remaining

unpaid pursuant to the terms of said contract, plus interest to June 26, 1944; that said check cleared and was paid, and cash in the sum of $5,364.10 was in possession of said escrow agent for delivery to the said defendants on the 26th day of June, 1944, and said money is now in the possession of said escrow agent for delivery to the said defendants pursuant to the terms of said contract; that the said sum of $5,364.10, and no more, is the balance now remaining unpaid pursuant to the terms of said contract.

### XIII.

"That the plaintiff is ready and willing to pay to the defendants the sum of $5,364.10 in lawful money of the United States, and he has been, and now is ready and willing to receive a conveyance of said premises.

### XIV.

"That the said defendants did not at any time make demand upon the plaintiff for the payment of the balance of said purchase price; that the said defendants have not restored, nor offered to restore to the plaintiff, the mortgage installment, or interest money, or the taxes on said real property that were paid by him, or any part thereof, nor have they offered to return anything of value to the plaintiff.

"From the foregoing findings of fact, the Court concludes as a matter of law as follows:

### CONCLUSIONS OF LAW.

#### I.

"That the contract of lease and option to purchase entered into by and between the parties to this action on the 13th day of June, 1942, was and is a valid contract, and at all times since the execution thereof, said contract has been and is now in full force and effect, and the plaintiff has not forfeited his rights thereunder.

#### II.

"That the payment of the mortgage installments by the' plaintiff to the Federal Land Bank of Spokane on or about the 16th day of June, 1943, with the knowledge, consent, and acquiescence of the defendants, amounted to an exer-

cise of the option by the plaintiff, and the defendants thereby agreed to and ratified the manner in which said option was exercised, and the said contract was thereupon converted into an executory contract of sale.

### III.

"That the said defendants waived strict performance with respect to the time of payment of the indebtedness by their acceptance of an interest payment of $255.00 on July 10, 1943, and by permitting the plaintiff, with their knowledge, consent, and acquiescence, to pay the mortgage installments on June 16, 1943, January 22, 1944, May 12, 1944, and June 21, 1944, and by advising the plaintiff that all they wanted was the interest money, and that they would let him know when they wanted the balance of the purchase price.

### IV.

"That the defendants have not done equity, nor have they offered to do equity.

### V.

"That the plaintiff is entitled to specific performance of said contract upon delivery to the defendants of the sum of $5,364.10.

### VI.

"That the defendants are not entitled to any relief under any or either of their alleged affirmative separate answers and defenses."

Judgment was entered against defendants and in favor of plaintiff, from which defendants have appealed.

There is very little conflict in the material evidence in this case. On the other hand, there is abundant evidence to support the findings of the court. The contract here involved did not make *time of its essence;* nor does it concern property of a fluctuating or uncertain value. On the contrary, it involved property of a real and permanent character (realty), concerning which lapse of a brief time could make very little difference to either the vendor or purchaser by the delay of a few days in the matter of the performance of a contract of purchase. More-

over, conduct of appellant (the vendor), in the matter of receipt of advances on interest and principal, was such as to render unfair and inequitable a forfeiture under the facts found by the trial court as above set out. The acceptance of interest and part of the purchase price would indicate to the purchaser the acquiescence of the vendor in delaying payment and affords an evidence of waiver of payment of the principal on the date specified in the contract.

This court has frequently been called upon to consider the matter of performance of similar contracts and the right of forfeiture to the vendor. In the case of *Sullivan v. Burcaw,* 35 Ida. 755, 763, 208 P. 841, we said:

"Where a contract for sale of real estate makes time of the essence, and provides for a forfeiture of the vendee's rights for failure on his part to make payments at certain times, a continued course of conduct on the part of the vendor in failing to declare a forfeiture, thereby leading the vendee to believe that the vendor waives a strict compliance with the terms of the contract, works a waiver of the vendor's right to declare a forfeiture, unless and until he gives the vendee reasonable notice of his intention to do so, and a reasonable oportunity to make the delinquent payments." (Citing many authorities).

Again, in *Seeley v. Security National Bank,* 40 Ida. 574, 583, 235 P. 976, we said:

"By accepting a part payment in November, 1920, and permitting Hendry to make the payment on the Naser mortgage in January, 1921, Seeley waived strict performance and the right to declare a forfeiture without giving Hendry reasonable notice of his intention to do so and a reasonable opportunity to make the delinquent payment." (Citing the Sullivan-Burcaw case and other cases.)

Equity abhors forfeitures. (*Zezi v. Lightfoot,* 57 Ida. 707, 713, 68 P. (2d) 50; *Brockman v. Caviness,* 61 Ida. 254, 260, 100 P. (2d) 946 (dissenting opinion); *Hurst v. Idaho Iowa Lateral & Reservoir Co.,* 42 Ida. 436, 442, 246 P. 23; *Abercrombie v. Stoddard,* 39 Ida. 146, 158, 228 P. 232.)

We have examined the specifications of error with reference to the admission of evidence, to which appellant

objected, and find no prejudicial error in the rulings of the court thereon.

The evidence offered by respondent and admitted by the court did not alter the written contract but, on the contrary, had the tendency to prove what was actually done *in pursuance of the contract.* The performance of a contract, whether oral or in writing, is often only provable by oral testimony as to what was actually done. Here the oral testimony established part performance by respondent and acceptance by the appellant and a waiver of the *strictness of time in making full payment.*

■ The contention, that this transaction involved community property and that the wife did not personally participate in the waiver or payment of taxes or payment on the mortgage, and that it was necessary in order to bind her that such waiver be in writing signed and acknowledged by the wife, is not sufficient to avoid the waiver, for the reason that she had already joined in an agreement to sell and in the execution of the deed which had been placed in escrow. The finding and conclusion of the court,

"That the said defendants waived strict performance with respect to the time of payment of the indebtedness by their acceptance of" interest payment, payment of mortgage installments "and by advising the plaintiff that all they wanted was the interest money, and that they would let him know when they wanted the balance of the purchase price",

is supported by the evidence and does not involve the execution and acknowledgment of the contract of sale and transfer which had previously been made.

The receipts from the sale of community property are community property still and subject to the management and control of the husband. (Sec. 31-913, I.C.A.)

In *Binder v. Blair,* 48 Ida. 580, 583, 283 P. 613, we said:

"The supplemental contract extended the time of payment called for by the earlier contract. This did not involve the sale, incumbrance or transfer of community real property and did not require acknowledgment. (*Hensel v. Bissell,* 110 Wash. 568, 188 P. 774.)

"In a line of cases analogous to the case at bar, it has been held that agreements made subsequent to a contract for the transfer of real estate, which subsequent agreements relate merely to details of the earlier agreement, such as the time of payment, are not agreements relating to the transfer of real estate and therefore need not be in writing. (Citing authorities, other states.)

"Similarly in the case at bar, the subsequent agreement modified certain details of the earlier agreement but did not itself relate to the transfer of community property."

It follows from what has been said that the judgment in this case should be affirmed, and it is so ordered. Costs in favor of respondent.

Miller, J., concurs.

Budge, J., concurs in conclusion.

GIVENS, J., Specially concurring—This being an option contract, the majority rule appears to be that time, though not specified, is of the essence, 66 C.J. 503; otherwise, I concur.

Holden, J., deeming himself disqualified, did not sit or participate in the decision in this case.