708 P.2d 887

Betty L. BORCHERT,
Plaintiff-Appellant,

v.

HECLA MINING COMPANY, a corporation, and Loyd Gullickson and Jane Doe Gullickson, husband and wife, Defendants-Respondents.

No. 15664.

Supreme Court of Idaho.

Oct. 10, 1985.

Daniel P. Featherston, Sandpoint, for plaintiff-appellant.

Fred M. Gibler, Kellogg, for defendants-respondents.

SHEPARD, Justice.

This is an appeal from a summary judgment issued in favor of defendants-respondents in an action filed by plaintiff Borchert alleging forfeiture of a real estate sales contract without adequate notice or opportunity to cure the default, and conspiracy to forfeit Borchert's interest in the real property. We affirm.

The facts are uncontroverted. In 1968, Borchert's husband was an employee of Hecla Mining Company, and he entered into a real estate contract to purchase, interest free, a residential property. The purchase price was $5,600, payable at the rate of $70 monthly, and evidently no down payment was required. The balance was not to accrue interest unless, prior to payment of the principal in full, Borchert left the employment of Hecla Mining. If he did so leave the employment of Hecla Mining, the contract provided for six per cent interest annually on the unpaid balance. Absent the consent of Hecla Mining, assignment of the contract, rental of the premises, or occupation of the property by anyone other than Borchert was forbidden. Borchert was required by the contract to keep the property in good repair and to pay taxes and fire insurance. The contract included the following language:

"TIME shall be of the essence of this agreement, and if the party of the second part [Borchert] shall fail to make each or any of the aforesaid payments promptly when the same shall become due and owing, as hereinabove provided, or if the party of the second part shall violate any of the other provisions of this agreement, then the party of the first part [Hecla Mining] may, at its option, declare this agreement forfeited, and in such event the said party of the second part shall have no further rights hereunder and the party of the first part may take possession of said property and may retain, as liquidated damages for the second party's breach of this agreement and as rental for the second party's use and occupancy of the aforesaid property, any and all sums of money which the party of the second part may theretofore have paid hereunder."

Of especial significance to the instant action, the contract contained no "cure" provisions in the event of default.

In May 1976, the Borcherts were in financial difficulty, and Hecla Mining agreed to reduce the monthly payments from $70 to $37.50, with interest to be paid at six per cent annually, and the contract was amended accordingly. At that time, Borchert had left the employment of Hecla Mining Company. Following the contract amendment in May 1976, the Borcherts made monthly payments only irregularly and by December 1980, they had failed to pay at least nine monthly installments. In 1981, the Borcherts made no payments.

During 1978, Legal Aid contacted Hecla Mining on behalf of the Borcherts, requesting permission to allow the Borcherts to rent the premises. Hecla Mining refused, indicating that the Borcherts would be better off selling the property, satisfying their equity, and remitting the balance owed to Hecla Mining. Borchert's husband died in early 1981. Hecla Mining had discussions with plaintiff-appellant Borchert both before and after her husband's death, informing her that she was in default and that unless the contract was brought current,

Hecla Mining would invoke its forfeiture provisions. The last of these discussions occurred in March 1981. In April 1981, Hecla Mining's employment supervisor went to the Borchert property to speak with Mrs. Borchert, who was not there. The property appeared to be abandoned. He spoke with Borchert's daughter, who did not know where her mother was and confirmed that no one lived in the house. He learned that electricity to the house had been shut off and that the utility bills were then five months delinquent. The property taxes had not been paid and there was no fire insurance coverage on the premises.

By letters dated June 3, 1981 and June 4, 1981, Hecla Mining informed Borchert that she was in default due to her failure to make payments and stated that it planned to reenter and take possession of the premises three days from the date of those notices. Borchert admits that she received those notices from Hecla Mining. Borchert did not tender to Hecla Mining the back payments or the balance due on the contract, nor did she contact Hecla Mining in any way.

Hecla Mining took possession of the property and, on June 24, 1981, sold it to defendant Lloyd Gullickson for $2,753.76, that being the balance due under the Borchert contract.

Borchert filed this complaint against Hecla Mining and the Gullicksons, alleging that Hecla Mining's repossession of the property was without adequate notice and opportunity to cure the default. She alleged trespass by Hecla Mining and interference with her attempts to rent or resell the property, and she further alleged that Gullickson had conspired with Hecla Mining "in some manner unknown to the plaintiff," in order to obtain title to the property.

Both sides moved for summary judgment. The court indicated that summary judgment would be granted to the defendants, there being no showing of conspiracy and no provision in the contract giving Borchert the right to cure a default. The court, however, postponed its final decision,

in order to allow Borchert to amend her complaint to assert a claim of unconscionable forfeiture. Borchert made no attempt to amend the complaint, and the complaint was dismissed with prejudice on June 26, 1984. The only issues validly raised on this appeal are the legality of the default procedure under the contract and the trial court's interpretation of the contract's default provision.

The contract makes no provision for the vendee to cure any default. We note that Hecla Mining informed Borchert, in May 1981 and before, of Hecla Mining's intent to repossess the property. That repossession did not occur until June 1981. We find nothing in our statutes or in the common law requiring a seller to provide an opportunity to cure a default. As stated by the Court in *Prairie Dev. Co., Ltd. v. Leiberg*, 15 Idaho 379, at 394, 98 P. 616, at 621 (1908):

> "We are not aware of any authorities which hold that where time is made of the essence of a contract, and payments are not made in accordance with such contract, that the other party is required to serve notice upon such defaulter of the intention to declare such contract forfeited unless the payments be made in accordance therewith, and that a reasonable time must be given for complying with said contract."

*Accord Papesh v. Wagnon*, 29 Idaho 93, 157 P. 775 (1916).

Borchert relies heavily upon *Rush v. Anestos*, 104 Idaho 630, 661 P.2d 1229 (1983). There the Court held in dicta that, if a real estate contract does not specifically set the time for curing default, a reasonable time will be allowed. *Rush* is distinguishable from the instant case, since in *Rush* the escrow instructions required the seller to provide formal notice of default and granted the vendee an opportunity to cure the default.

Here, while the contractual provisions are arguably harsh, there is no assertion by Borchert that they are unconscionable. The contract did not require a down payment and the monthly payments were cer-

tainly modest. At a time after the contract had been signed and in effect, Hecla Mining agreed to and did amend the contract to reduce those modest monthly payments by nearly 50%. Even those reduced payments were severely in arrears. The property had been abandoned. The taxes and the fire insurance had not been maintained, thereby placing Hecla Mining further at risk. There is a total lack of any indication that Hecla Mining profited by its reentry of the property and the resale, or that Hecla Mining was unjustly enriched at the expense of Borchert. To the contrary, the record demonstrates that the property was resold to Gullickson for only the balance remaining due under the original contract.

We will not rewrite the parties' contract for them and, where as here, it is unambiguous, it will be enforced according to its terms. *Christensen Motor Sales, Inc. v. American Motor Sales, Inc.*, 108 Idaho 102, 697 P.2d 442 (1985); *J.R. Simplot Co. v. Chambers*, 82 Idaho 104, 350 P.2d 211 (1960); *Durant v. Snyder*, 65 Idaho 678, 151 P.2d 776 (1944).

We have considered plaintiff's other assertions of error and find them to be without merit.

The decision of the trial court granting summary judgment for defendants is affirmed. No costs or attorney's fees on appeal.

DONALDSON, C.J., concurs.

BAKES, J., concurs in result.

BISTLINE and HUNTLEY, JJ., dissent.

BISTLINE, Justice, dissenting.

## I.

On the authority of two ancient Idaho cases today's plurality holds that a vendor need not offer a vendee the opportunity to cure a default and sustains Hecla Mining in depriving the widow Borchert of what may be her one meager asset. In so doing, the plurality of a necessity ignores (1) the fact that Hecla Mining by a course of conduct indulged her defaults; and, (2) time-hon-

ored Idaho case law which firmly established that such a course of conduct waives the vendor's right to declare forfeiture without first giving a reasonable notice of default to the vendee, which notice provides an adequate opportunity to make the delinquent payments.

By the plurality's and Hecla's admission, the Borcherts had made payments only irregularly from 1976 on. Nevertheless, Hecla accepted those sporadic payments and gave no indication that it would not continue to so indulge Mrs. Borchert's poor financial situation. In such an instance, the rule of *Williamson v. Smith*, 74 Idaho 79, 256 P.2d 784 (1953), is applicable and dispositive:

"Where a contract for sale of real estate makes time of the essence, and provides for a forfeiture of the vendee's rights for failure on his part to make payments at certain times, *a continued course of conduct* on the part of the vendor *in failing to declare a forfeiture, thereby leading the vendee to believe that the vendor waives a strict compliance with the terms of the contract, works a waiver* of the vendor's right to declare a forfeiture, unless and until he gives the vendee reasonable notice of his intention to do so, and a reasonable opportunity to make the delinquent payments."

74 Idaho at 82–83, 256 P.2d at 785 (quoting *Stringer v. Swanstrum*, 66 Idaho 752, 760, 168 P.2d 826, 829 (1946), which in turn quoted *Sullivan v. Burcaw*, 35 Idaho 755, 763, 208 P. 841, 843 (1922)) (emphasis added).

This rule applies regardless of whether the contract expressly contains a requirement of notice. *Id.; Stockmen's Supply Co. v. Jenne*, 72 Idaho 57, 63, 237 P.2d 613, 617 (1951) ("[T]he above rule was announced [in *Sullivan* ] even though the contract did not require notice of forfeiture....").

Instead of providing Mrs. Borchert with requisite reasonable notice and opportunity to cure the default, Hecla, by its two identical letters to Mrs. Borchert, declared a forfeiture *eo instante*. At oral argument, Hecla asserted that, absent an express pro-

vision in the contract for the giving of notice, none was required.[1] Precisely that same argument was made to the *Williamson* court.

In *Williamson*, the contract contained a forfeiture clause in form only slightly different from the instant one. The *Williamson* contract provided:

> In the event of a failure to comply with the terms hereof, by the parties of the second part, the said parties of the first part shall be released from obligation in law or equity to convey said property, and said parties of the second part shall forfeit all right thereto, and all payments made on said property.
>
> . . . .
>
> It is expressly understood and agreed that time is the essence of this agreement, and that upon a default in any of the payments, convenants or conditions herein contained on the part or behalf of the said parties of the second part to be paid, kept or performed, the said parties of the first part may immediately re-enter and take possession of said premises and every part thereof, and to eject said parties of the second part therefrom, and said parties of the first part shall be released from all obligations, either in law or in equity to convey the said premises as herein provided; and any amount which shall have been paid hereon by said parties of the second part, shall and may be retained by the first parties and accepted by them as rental for said premises during such occupancy by said parties of the second part.
>
> It is understood and agreed that time is the essence of this agreement.

*Williamson*, Exh. A.

With that contract before it, and with the vendor citing Prairie Development Co. v. Leiberg, 15 Idaho 379, 394, 98 P. 616 (1908), this Court held that the law required the vendor to give notice of the intention to declare a forfeiture so as to allow the vendee a reasonable opportunity to make the delinquent payments. *Williamson, supra,* 74 Idaho at 83, 256 P.2d at 785.

The *Williamson* Court, in declining to resurrect and apply the holding of *Prairie Development,* instead turned to the language of *Sullivan v. Burcaw,* 35 Idaho 755, 764, 208 P. 841, 844 (1922), which had been relied upon in *Stringer v. Swanstrum,* 66 Idaho 752, 168 P.2d 826 (1946). In *Sullivan,* the Court had severely limited *Prairie Development:*

> We have been cited by respondent to the case of *Prairie Dev. Co. v. Leiberg,* 15 Ida. 379, 98 Pac. 616. As we understand the facts of that case, the court held that where payment for the land was to be made instalments, and the vendor, by a written agreement indorsed on the original contract, specifically granted a definite extension of time to make one of the payments, this fact would not waive the conditions of the contract as to the time of future payments. We approve of that conclusion because a specific agreement in regard to one payment could not be held to apply to others and the vendee could not be misled. *We do not consider that decision conflicts with the conclusion we have stated above as to the effect of a continued course of conduct waiving the strict provisions of the contract.*
>
> *Sullivan, supra,* 35 Idaho at 764, 208 P. at 844 (1922) (emphasis added).

As was also the case in *Sullivan,* here there was a continued course of conduct of indulging in the Borcherts' fitful payments for some five years. This being so, *Sullivan* and its progeny required Hecla to give notice allowing Mrs. Borchert the opportunity to cure the default. Such was the case law then in effect. Mere intimations by Hecla that it might declare a forfeiture were not enough—specific notice of a declaration of forfeiture and the opportunity to cure were required. It is a total mystery why today's majority passes over later cases squarely in point in favor of falling

---

1. Hecla relied on an early Idaho case upon which the district court had also relied, *Prairie Development Co. v. Leiberg,* 15 Idaho 379, 98 P. 616 (1908), in turn blindly accepted by today's plurality as *the* controlling case.

back to a 1908 case which thereafter never again was cited by an Idaho court for the principle here involved other than in *Coe v. Bennett,* 46 Idaho 62, 266 P. 413, in the year 1928. But in 1951 and in 1953 the Court had announced, respectively, its opinions in *Stockmen's Supply* and in *Williamson.*

The briefs in *Coe* have been examined. Sullivan was not cited or argued to the Court for the principle here involved. Although *Prairie Development* was cited, the Court in *Coe* relied upon *Papesh v. Wagnon,* 29 Idaho 93, 157 P. 775 (1916), quoting directly from it. *Sullivan,* however, was then more recent authority than the *Papesh* case. The issue in *Coe,* moreover, was not the issue in this case. That case was not an action to resist a forfeiture, but an action by a defaulted vendee to recover back payments made which were in excess of the amount forfeited—a principle which the Court did not espouse until almost 30 years later in *Graves v. Cupic,* 75 Idaho 451, 272 P.2d 1020 (1954). Of interest, the respondent in *Coe* cited only one case, *Hall v. Yaryan,* 25 Idaho 470, 138 P. 339 (1914). Therein Justice Ailshie forecast the case law of *Graves v. Cupic.*

While there is a certain freedom of contract in Idaho, since 1922 the case law has required a reasonable time—set by notice of default—before such harsh terms of a contract can be applied. For whatever reason, and none appears, other than sheer indifference, the plurality works a gross miscarriage of justice on Mrs. Borchert and makes a shambles of 60 years of Idaho case law which has never been questioned. Fortunately the plurality opinion lacks the impact of a majority opinion. Wherever Idaho jurisprudence, or lack thereof, may come up for discussion, *Borchert v. Hecla Mining* may take its rightful place alongside of *Duthie v. Lewiston Gun Club,* 104 Idaho 751, 663 P.2d 287 (1983), where the doctrine of *res judicata* was stood on its head.

## II.

Not content in destroying the law regarding forfeiture, the plurality further embarrasses itself by addressing the question of whether the contract at issue was unconscionable. This gratuitous dissertation ignores its own observation that plaintiff Borchert had not raised this issue, either in the trial court, or in this Court. The plurality accurately observes that the contract payments were "certainly modest" —a fact which no one has challenged—then observes a series of other factual circumstances which the casual reader might deem to be of interest, but which are wholly irrelevant to the question of whether the contract provisions which failed to require notice were in that respect unconscionable. Overlooked entirely is the fact that a vendee who had faithfully attempted to make monthly payments for 20 years, but who was a day late one month, may be forfeited out. "Arguably harsh," comments the plurality, but excuses itself with the observation that the contract doth so provide. Interested readers and litigants in the future may want to keep in mind that those comments on unconscionability are mere *obiter dicta* of a plurality opinion, wholly without any precedential value.

If the plurality wanted to add some comment favorable to Hecla, while at the same time reversing the decision made below, it could point out that Hecla was in all probability selling its millworker houses to its employees for less than rent. (For which reason Mrs. Borchert obviously could not present even a facsimile of a case in restitution for unjust enrichment, per the *Graves v. Cupic* doctrine.) Its indulgences in her inability to make monthly payments were undoubtedly out of compassion and by reason of simply not wanting the property back—as witnessed by the fact that it immediately sold the same for apparently the amount which she owed. Certainly Hecla did not act out of greed or avarice. Unfortunately, it did act out of ignorance of the then existing state of the case law. Either a new general manager, or its attorney, or both were uninformed on such mundane matters as Idaho property law. Little matter, because that case law is not being followed by the very Court which created

488

it. Worse yet the plurality does not acknowledge that it knows what it is doing.

Even worse, there may be those who comprise the necessary three votes for affirming the judgment below who do not know what is being done. One would like to think that where two members of the Court (also a plurality) have laid out contrary views which are documented on precedential case law, at least one justice among the three would deign an attempt at illustrating how today's decision may be distinguished from *Williamson*. If two dissenting voices remonstrating from the very midst of the Court are unable to penetrate the stone-wall veneer with the thrust of indisputable precedent, what, then, may the poor practitioner expect? In other recent cases, the Court has seen fit to overrule prior case law, and delineate its reasons for so doing. *Cheney v. Palos Verdes*, 104 Idaho 897, 665 P.2d 661 (1983); *Barnard v. Akins*, 109 Idaho 466, 708 P.2d 871, (1985) (pending disposition on petition for rehearing).

HUNTLEY, Justice, dissenting.

I not only agree with Justice Bistline's dissent but must express my own amazement at the plurality's view of the practice of real estate law.

Attorneys drafting real estate agreements in Idaho customarily provide default provisions of sixty days or one hundred twenty days, occasionally thirty days, but almost never less than thirty days. Their practice indicates the state of the law. The three-day period provided for in the two letters was a declaration that forfeiture had already occurred.

It is basic that notice of default is required. When a contract is silent as to a required term the courts require that the time period judicially supplied will be "reasonable."

Compounding the problem here is the fact that the three day period indicated did not provide for three days in which to cure the default but rather simply gave three days notice that the default had been declared without written notice of any time whatsoever in which to effect a cure.

Hopefully the bench and bar will regard this decision as aberrational and not to be considered as a serious chapter in the development of Idaho real estate law.