(August 2, 1922.)

JAS. F. SULLIVAN, Respondent, v. J. A. BURCAW, Defendant; LILLIAN M. SEELEY, Formerly LILLIAN M. BURCAW, Wife of said J. A. BURCAW, and FRANK SEELEY, Present Husband of Said LILLIAN M. SEELEY, Appellants.

[208 Pac. 841.]

EQUITY—CONTRACT FOR PURCHASE OF REAL ESTATE—BUYER'S DEFAULT —SPECIFIC PERFORMANCE OF FORFEITURE — WAIVER BY SELLER — REINSTATEMENT OF RIGHT OF FORFEITURE.

1.   Equity will not grant specific performance of a forfeiture unless the failure to do so would lead to an unconscionable result.

2.   Where a contract for sale of real estate makes time of the essence, and provides for a forfeiture of the vendee's rights for failure on his part to make payments at certain times, a continued course of conduct on the part of the vendor in failing to declare a forfeiture, thereby leading the vendee to believe that the vendor waives a strict compliance with the terms of the contract, works a waiver of the vendor's right to declare a forfeiture, unless and until he gives the vendee reasonable notice of his intention to do so, and a reasonable opportunity to make the delinquent payments.

APPEAL from the District Court of the Eighth Judicial District, for Kootenai County.   Hon. John M. Flynn, Judge.

Action for specific performance of a forfeiture.   From a judgment for plaintiff, defendants appeal.   *Reversed.*

J. F. Ailshie, J. F. Ailshie, Jr., and Ray Agee, for Appellants.

Where an instalment contract, in which time is made the essence thereof, gives the vendor an option to forfeit upon a breach of such contract by the vendee, the vendor cannot summarily declare the contract forfeited, but he must give the vendee notice of his intention to do so and a reasonable time within which to comply with the provisions of the contract. (*Higinbotham v. Frock*, 48 Or. 129, 120 Am. St. 796, 83 Pac. 536; *O'Connor v. Hughes*, 35 Minn. 446, 29 N. W. 152; *Basse v. Gallegger*, 7 Wis. 442, 76 Am. Dec. 225; 39 Cyc. 1360, 1383; 20 Am. & Eng. Ency. of Law, 2d ed., 684.)

Where time is of the essence of a contract and the vendor, by his conduct, leads the vendee to believe that a forfeiture will not be insisted upon, he thereby waives his right to declare a forfeiture until he gives the vendee reasonable notice of his intention to do so and an opportunity to perform. (*Eaton v. Schneider*, 185 Ill. 508, 57 N. E. 421; *Gray v. Pelton*, 67 Or. 239, 135 Pac. 755; *Gibson v. Rouse*, 81 Wash. 102, 142 Pac. 464; *Cue v. Johnson*, 73 Kan. 558, 85 Pac. 598; *Monson v. Bragdon*, 159 Ill. 61, 42 N. E. 383; *Gray v. Gurley*, 252 Mo. 410, 159 S. W. 1076; *City of Los Angeles v. Krutz*, 170 Cal. 344, 149 Pac. 580; *Walker v. McMurchie*, 61 Wash. 489, 112 Pac. 500; *Ball v. Belden*, 59 Tex. Civ. 29, 126 S. W. 20; *Smith v. Treat*, 234 Ill. 552, 85 N. E. 289; *Casner v. Meyer* (Mo. App.), 191 S. W. 1119; *Kessler v. Pruitt*, 14 Ida. 175, 93 Pac. 965.)

Forfeitures are looked upon unfavorably by courts of equity and they will turn to the vendor to see if the default is the result of his act or conduct, or was contributed to by him. (*King v. Seebeck*, 20 Ida. 223, 118 Pac. 292; *Harris v. Reed*, 21 Ida. 364, 121 Pac. 780; *Prairie Dev. Co. v. Leiberg*, 15 Ida. 379, 98 Pac. 616.)

Courts of equity are loth to enforce a forfeiture, especially when a refusal to do so will give the vendor every right he was entitled to under the contract. (*Kohler v. Lundberg*, 54 Utah, 339, 180 Pac. 590.)

Potts & Wernette, for Respondent.

Where the parties have so stipulated as to make the time of payment of the essence of the contract within the view of equity, as well as of law, a court of equity cannot relieve a vendee who has made default. (1 Pomeroy's Eq. Jur., 3d ed., sec. 455; vol. 6, sec. 811; *Glock v. Howard & Wilson Colony Co.*, 123 Cal. 1, 69 Am. St. 17, 55 Pac. 713, 43 L. R. A. 119; 39 Cyc. 1369; 6 R. C. L., sec. 285; *Garvey v. Barkley*, 56 Wash. 24, 104 Pac. 1108.)

When an extension of time is given the vendor does not thereby waive his right to rescind or forfeit the contract, if the purchaser refused to pay when the time fixed by the agreement for extension has elapsed. (39 Cyc. 1393, 1395, 13 C. J. 689; *Bryson v. McCone*, 121 Cal. 153, 53 Pac. 637.)

Where the vendee has been guilty of gross neglect in regard to performance, the vendor has a right to rescind, even though the time within which a contract for the sale of land should be performed has become indefinite because of mutual forbearance of the parties. (39 Cyc. 1392; 6 Pomeroy's Eq. Jur., 3d ed., sec. 816.)

A tender to be sufficient in law must be in an amount at least equal to the amount due. (*Louisville & N. R. Co. v. Cottengim*, 31 Ky. Law. Rep. 871, 104 S. W. 280; *Fridge v. State*, 3 Gill & J. (Md.) 103, 20 Am. Dec. 463; *Cary v. Bancroft*, 14 Pick. (Mass.) 315, 25 Am. Dec. 393; *State v. Barnes*, 22 N. D. 18, Ann. Cas. 1913E, 930, 132 N. W. 215, 37 L. R. A., N. S., 114; *Horgan v. Russell*, 24 N. D. 490, 140 N. W. 99, 43 L. R. A., N. S., 1150; *Bell v. Riggs*, 34 Okl. 834, 127 Pac. 427, 41 L. R. A., N. S., 1111; *Stolze v. Milwaukee etc. R. Co.*, 113 Wis. 44, 90 Am. St. 833, 88 N. W. 919.)

If a party, seeking specific performance, has been guilty of gross laches, or has been inexcusably negligent, in performing the contract on his part, or if there has in the meantime been a material change in circumstances affecting the rights, interest or obligation of the parties, courts of

equity will refuse to decree specific performance. (*Taylor v. Longworth,* 14 Pet. (39 U. S.) 172, 10 L. ed. 405.)

McCARTHY, J.—Respondent brought this action for the purpose of canceling and terminating a written contract between himself and J. A. Burcaw. Defendant J. A. Burcaw filed a disclaimer. The other defendants demurred; their demurrer being overruled, they answered, traversing the material allegations of the complaint, and setting up certain affirmative defenses, and filed a cross-complaint for specific performance of the contract.

In 1916 respondent was the owner of the property in question, being a lot in the city of Coeur d'Alene, Idaho, subject to a mortgage of $350. On December 19th of that year respondent and J. A. Burcaw entered into a written agreement by which the former agreed to sell and the latter to purchase said property for $1300, $200 to be paid upon the execution of the contract, and $15 on July 1, 1917, and on the first of each month thereafter until the whole was paid, with interest at seven per cent per annum, payable semi-annually. Respondent agreed to pay the mortgage and interest. Burcaw was to pay the taxes. The contract provided that time should be of its essence and contained the following language: "And in case of the failure of said party of the second part to make either of the payments, or any part thereof, or perform any of the covenants on his part hereby made and entered into, this contract shall, at the option of the party of the first part, be forfeited and determined, and the party of the second part shall forfeit all payments made by him on this contract, and such payments shall be retained by the said party of the first part in full satisfaction and liquidation of all damages by him sustained, and he shall have the right to re-enter and take possession of the premises aforesaid."

At the time of the execution of this contract said J. A. Burcaw and appellant Lillian M. Seeley were husband and wife. They took and kept possession of the property until the early part of 1919 when they separated and the woman

remained in possession. Later, after divorcing Burcaw, she married appellant Frank Seeley and they continued in pos-'session up to the time of the bringing of this action. In the divorce decree appellant Mrs. Seeley was awarded the property in question and Burcaw was ordered to complete the payments. Up to June 7, 1919, Burcaw paid and respondent accepted upon the contract, $525 in addition to the $200 which was paid down. From June, 1919, to the trial nothing more was paid nor were the taxes paid for 1918, 1919 or 1920. In the latter part of 1916 the $350 mortgage which respondent had agreed to pay was foreclosed and respondent, with the consent of Burcaw, remortgaged the property for $625 to one Newton, the mortgage being arranged for by one W. W. Leeper of Coeur d'Alene, who acted as respondent's agent in the matter. This mortgage played an important part in the law suit, certain facts in connection with it being relied on as an affirmative defense. More will be said about it in this connection later in the opinion. In January, 1920, respondent learning that Burcaw had not been keeping up the payments, wrote him in regard to the matter, and received a reply in which Burcaw said that he intended to finish paying for the place, that he was behind a couple of months in his payments and had not paid the last year's interest and taxes. Shortly after that Burcaw saw respondent and told him he was going to keep up the payments on the place, and respondent made no objection. In the winter of 1919 appellant Mrs. Seeley wrote to respondent about the property and payments which had been made on the contract. He replied asking her to state all the payments she had made since December, 1918, advising her to make further payments to Newton, not Leeper, and stating: "You needn't think that I am going to crowd you on account of a few back payments. That ain't my principle." On February 28th, she replied that she had just learned that Burcaw had not been keeping up the payments, that her folks had offered to finish paying for the property if Burcaw would deed the property to her, and asked respondent whether she should pay Newton $75 which

she was holding. On April 8, 1920, respondent answered her saying he wished she would go to the bank and raise the balance which was coming to him so that he would be out of it. In May, 1920, Burcaw executed and delivered to her a quitclaim deed to the property. She had employed James F. Ailshie, Esq., to look after her interests and he and respondent corresponded about the matter. In August, 1920, respondent sent a deed to the property to the American Trust Company Bank at Coeur d'Alene with directions to deliver it to Mrs. Seeley upon her paying the balance due. Appellant Mrs. Seeley claimed that neither she nor her attorney was informed of the arrival of the deed. The cashier of the bank said he thought he notified Mr. Ailshie's office but there was no positive proof to this effect. Not hearing from the matter, the latter part of September, 1920, respondent came to Coeur d'Alene. The above facts are admitted or are not in controversy.

The evidence is conflicting as to what happened when respondent came to Coeur d'Alene. Appellant Mrs. Seeley testified that he demanded the money or the property, that she told him she had the money, had been waiting for the deed and was ready to settle at any time, that she made a tender of $584.90, the amount which she claimed to be due, and demanded her deed, subject to the Newton mortgage, and all taxes and liens which had accrued since the contract, that respondent told her he would be down next day and tell her what he would do. Respondent testified that appellant Mrs. Seeley stated to him that she would not pay, and would fight him if he attempted to gain possession of the property. After their conversation he served a written notice on appellants stating that he elected to forfeit their rights under the contract, and proposed to hold the amounts which had been paid as liquidated damages, and demanded possession. After the service of this notice appellants again tendered $584.90 and demanded a warranty deed. Respondent refused to accept the tender or deliver the deed and this action was brought.

We will return now to the matter of the $625 mortgage to Newton. It was sent to respondent at Seattle and there executed by himself and wife. Upon its being returned to Coeur d'Alene, Leeper, who was acting for respondent in the matter, had it executed by Burcaw and appellant Mrs. Seeley who was then his wife. As an affirmative defense, appellants alleged and testified that they signed the note and mortgage to Newton at the request of respondent, that in consideration thereof respondent agreed the said sum of $625 and interest, totalling $812.50 should be applied on the contract in lieu of the payments specified therein, that respondent waived his right to payments on the contract until said amount of $812.50 should be paid on said note and mortgage. The purpose of this defense was to show that they were not in default in their payments on the contract at the time the suit was brought. Respondent denied that they signed the note and mortgage at his request or with his knowledge, as did the mortgagee, Newton, both claiming that they first learned the fact after a controversy arose and shortly before the bringing of the action. Respondent contended that the only agreement he made with appellants in regard to the mortgage was that the payments on the contract should be made to Newton and applied on the mortgage debt. In regard to this matter there was a square conflict in the evidence which the court resolved by finding that appellants did not sign the note and mortgage to Newton at the request or with the knowledge of respondent, and that respondent did not agree, in consideration of their signing the note and mortgage, that the principal and interest thereof, in the sum of $812.50, should be applied on the contract in lieu of the payments provided, and did not waive his right to payments on the contract until the said amount should be paid on the mortgage. It also found that appellants had not made any payments of principal or interest on the mortgage. The court thus found against the affirmative defense of appellants based on the note and mortgage to Newton, and, the evidence being in conflict, this court is bound by those findings.

The court found for respondent and entered a decree forfeiting appellants' rights under the contract, ordered that respondent retain all payments as liquidated damages and that appellants deliver up the premises to respondent.

Of appellants' many assignments of error we need consider only two, to wit: that the court erred in making and entering judgment in favor of respondent for the reason that neither the evidence nor the findings support it, and, second, that the court erred in not entering judgment for defendants as prayed for in their cross-complaint.

This is a suit in equity and brought to obtain, specific performance of an agreement for a forfeiture.

"When will a court of equity by its decree actively enforce or carry into effect a forfeiture? The general answer to this question is easy and clear. It is a well-settled and familiar doctrine that a court of equity will not interfere on behalf of the party entitled thereto, and enforce a forfeiture, but will leave him to his legal remedies, if any, even though the case might be one in which no equitable relief would be given to the defaulting party against the forfeiture." (1 Pomeroy's Equity Jurisprudence, 4th ed., sec. 459, pp. 870, 871.)

The many authorities cited fully bear out the text. This applies to a contract for the lease or sale of real estate which contains a provision that time is of the essence, and that failure of the vendee to comply with his contract works a forfeiture. (*Higinbotham v. Frock*, 48 Or. 129, 120 Am. St. 796, 83 Pac. 536; *Craig v. Hukill*, 37 W. Va. 520, 16 S. E. 363; *Oil Creek R. R. Co. v. Atlantic etc. Co.*, 57 Pa. St. 65.) This rule is not absolutely inflexible but is subject to some exceptions. The rule as to the exceptions is well stated as follows:

"The better view is that the rule is not absolute or inflexible, any more than is every forfeiture harsh and oppressive; that its influence and operation do not extend beyond the reasons which underlie it; and that in cases, otherwise properly cognizable in equity, there is no insuperable objection to the enforcement of a forfeiture when that

is more consonant with the principles of right, justice, and morality than to withhold equitable relief." (Mr. Justice Van Devanter in *Brewster v. Lanyon Zinc Co.*, 140 Fed. 801, 72 C. C. A. 213.)

See, also, *Farnsworth v. Minnesota & Pac. R. R. Co.*, 92 U. S. 49, 66, 23 L. ed. 530; *United States v. Oregon & C. R. Co.*, 186 Fed. 861, at 928.

Where a contract for sale of real estate makes time of the essence, and provides for a forfeiture of the vendee's rights for failure on his part to make payments at certain times, a continued course of conduct on the part of the vendor in failing to declare a forfeiture, thereby leading the vendee to believe that the vendor waives a strict compliance with the terms of the contract, works a waiver of the vendor's right to declare a forfeiture, unless and until he gives the vendee reasonable notice of his intention to do so, and a reasonable opportunity to make the delinquent payments. (*Eaton v. Schneider*, 185 Ill. 508, 57 N. E. 421; *Gray v. Pelton*, 67 Or. 239, 135 Pac. 755; *Monson v. Bragdon*, 159 Ill. 61, 42 N. E. 383; *Gray v. Gurley*, 252 Mo. 410, 159 S. W. 1076; *Walker v. McMurchie*, 61 Wash. 489, 112 Pac. 500; *Smith v. Treat*, 234 Ill. 552, 85 N. E. 289; *Missouri v. Bettner*, 68 Minn. 179, 70 N. W. 1076; *Stevinson v. Joy*, 164 Cal. 279, 128 Pac. 751; *Boone v. Templeman*, 158 Cal. 290, 139 Am. St. 126, 110 Pac. 947; *Fox v. Grange*, 261 Ill. 116, 103 N. E. 576; *Douglas v. Hanbury*, 56 Wash. 63, 134 Am. St. 1096, 104 Pac. 1110; *Boyd v. Warden*, 163 Cal. 155, 124 Pac. 841; *Robinson v. Trufant*, 97 Mich. 410, 56 N. W. 769; *Kohler v. Lundberg*, 54 Utah, 339, 180 Pac. 590.) We have been cited by respondent to the case of *Prairie Dev. Co. v. Leiberg*, 15 Ida. 379, 98 Pac. 616. As we understand the facts of that case, the court held that where payment for the land was to be made in instalments, and the vendor, by a written agreement indorsed on the original contract, specifically granted a definite extension of time to make one of the payments, this fact would not waive the conditions of the contract as to the time of future payments. We approve of that conclusion because a specific

agreement in regard to one payment could not be held to apply to others and the vendee could not be misled. We do not consider that decision conflicts with the conclusion we have stated above as to the effect of a continued course of conduct waiving the strict provisions of the contract.

Considering the admitted facts of this case and the findings of the court as to the controverted facts, we think the case falls within the general rule that equity will not enforce a forfeiture, rather than within the exception to it. After learning just how much appellants were in default, respondent treated the contract as still subsisting, and thereafter he could not exercise his right of forfeiture without giving appellants reasonable time to strictly comply with the contract. Conceding that appellants were in default, respondent's conduct had been such that equity should have denied him a right of strict forfeiture, and should have remitted him to another remedy, more equitable under the circumstances, viz., a proceeding to foreclose the equity of appellant Mrs. Seeley in the contract, unless she made such payments as should be found due, within such reasonable time as the court might fix. (*Higinbotham v. Frock, supra.*)

Appellants also claim that the court erred in not entering judgment for them on their cross-complaint. They themselves were not entitled to specific performance of the contract if they were in default. Their tender, made before the suit was brought, was admittedly insufficient unless the contract had been modified so as to deduct the amount of the mortgage to Newton from the purchase price. As above pointed out, the trial court, on conflicting evidence, found this issue against appellants, and by that finding we are bound under the familiar rule. Appellants therefore did not tender the total amount due and were not entitled to a specific performance of the contract.

The judgment is reversed and the cause remanded, with instructions to the lower court to enter judgment for appellants and against respondent on the issues presented by respondent's complaint and appellants' answer and to enter

judgment for respondent and against appellants on the issues presented by appellants' cross-complaint and respondent's answer thereto.   Costs are awarded to appellants.

Rice, C. J., and Budge, Dunn and Lee, JJ., concur.