283 P.2d 927

**Dayton RAFF, Plaintiff-Appellant,**

v.

**James E. BAIRD, Defendant-Respondent.**

No. 8230.

Supreme Court of Idaho.

May 13, 1955.

Thos. Y. Gwilliam, Nampa, for appellant.

J. Blaine Anderson, Blackfoot, for respondent.

424

TAYLOR, Chief Justice.

Plaintiff (appellant) brought this action to recover for materials furnished and labor performed in the construction of a house being built by defendant in Blackfoot. The complaint is in the usual form, alleging that the materials were furnished and the labor performed "at the special instance and request" of the defendant between the 8th day of November, 1952, and the 20th day of January, 1953.

As an affirmative defense the defendant (respondent) alleges that on or about the 8th day of November, 1952, plaintiff and defendant entered into an oral agreement whereby it was agreed that defendant and his wife would sell and plaintiff would buy the land upon which the house was being constructed, with the completed house, for a total consideration of $11,600; that the agreement was partially performed by the parties, that is, the defendant proceeded with the construction and made certain alterations in the original plumbing plans and lay-out, to conform to the wishes of plaintiff; proceeded to arrange with the Blackfoot Branch of the First Security Bank of Idaho for a loan, pursuant to the agreement, whereby plaintiff was to procure funds for the payment of the purchase price. Plaintiff, as a down payment thereon, agreed to install for the defendant, free of cost for labor and materials, two oil furnaces: one in the dwelling house sold to plaintiff, and one in another house to be constructed by defendant. Also, as a part of the down payment, plaintiff agreed to paint the house being sold to him. Plaintiff partially installed one of such furnaces and applied the primer coat of paint. Defendant also alleges that on or about November 14, 1952, acting in reliance upon the oral agreement and pursuant thereto, the defendant and his wife made, executed, acknowledged and delivered to the said bank their warranty deed conveying the house and lot to plaintiff. A copy of the deed is annexed to the answer. It recites a consideration of $11,650. No affidavit was filed by the plaintiff denying the genuineness and due execution of the deed, which are therefore deemed admitted. § 5-704, I.C. Defendant further alleges that on or about January 20, 1953, the plaintiff repudiated the agreement and refused to perform same, although the defendant had substantially performed all conditions precedent on his part, and although he and his wife were then ready, willing and able to perform.

Except for the admission of the genuineness and due execution of the deed, the allegations of the affirmative defense are deemed denied by plaintiff. § 5-812, I. C. From plaintiff's evidence, it appears plaintiff had moved from Nampa, Idaho, to Blackfoot to engage as a partner with his brother-in-law in the business of heat-

ing and sheet metal work; that he was employed by defendant to install the heating plant and to paint the house in question. He detailed the materials furnished, the hours worked, and rate of pay. Defendant proposed that plaintiff buy the house being constructed. Plaintiff responded that he had no money for a down payment, but that if he could do certain work for a down payment, and if the bank would make a loan for the balance, he would take the house. About January 20, 1953, a disagreement arose between partners, as a result of which plaintiff withdrew and returned to Nampa. Before leaving Blackfoot plaintiff advised defendant of his decision to abandon the contemplated purchase, and in a conference between the parties and plaintiff's brother-in-law it was agreed that the brother-in-law would finish the installation of the heating plant begun by the plaintiff. Later the brother-in-law billed plaintiff for work and materials required to complete the job. Plaintiff testified that he went to the bank and made application for the contemplated loan, but that his application had not been acted upon by the bank before he left Blackfoot.

In October, 1953, and prior to the commencement of this action, the defendant sold the house and lot to a third party for $11,600. There is conflict in the testimony of the purchaser as to the sale price. On direct examination he testified he conveyed to the defendant certain real property of the agreed value of $2,600, subject to a mortgage for $400, which defendant assumed and agreed to pay; and that he obtained a loan on the house and lot purchased, of $9,400, the proceeds of which went to defendant. On cross-examination he stated that the defendant would receive only $1,800 in value by the transfer to him of the other property; and then, on further cross-examination, he stated that the total consideration paid by him was $11,600.

Apparently the nonsuit was based upon the theory that plaintiff, being in default and having repudiated his contract to purchase the property, could not recover for materials furnished and labor done by him as a down payment thereon. Among other authority, respondent relies upon Williamson v. Wilson, 56 Idaho 198, 52 P.2d 138, and Nelson v. Altizer, 65 Idaho 428, 144 P.2d 1009.

In the Williamson case the court held a contract for the sale of community property, in which the wife did not join, was not invalid where a deed, executed and acknowledged by both husband and wife, was placed in escrow with the contract, and all parties and their assignees knew that the deed was so executed and held. The contract in that case was complete and certain in all essentials and fully complied with the statute of frauds. The grantees had held possession for over eleven years. The purchasers, in default, were denied recovery of payments made on the purchase price.

Nelson v. Altizer, supra, was an action by the purchaser for specific performance. The agreement of sale rested in parol. But a deed duly executed and acknowledged by the vendors, husband and wife, was delivered to the escrow holder pursuant to the parol agreement. The court held that by reason of the delivery of the deed to the escrow holder, there was no lack of mutuality, and, in effect, the deed constituted a sufficient "note" or "memorandum" to satisfy the statute of frauds, where the consideration had been paid. The purchasers had been given possession. Also, it must be noted, the deed in terms "bound the vendors to furnish a clear and marketable title." Considering this a reference to the county records, the terms of the "agreement" could be ascertained and made certain from such records without resort to parol evidence.

■ This court has long held that part performance may be sufficient to take a contract out of the operation of the statute of frauds. Deeds v. Stephens, 8 Idaho 514, 69 P. 534; Robbins v. Porter, 12 Idaho 738, 88 P. 86; Fry v. Weyen, 58 Idaho 181, 70 P.2d 359; Anselmo v. Beardmore, 70 Idaho 392, 219 P.2d 946. In Robbins v. Porter, a deed executed by the grantor and left with his attorney was sufficient to bar the operation of the statute, where the purchase price had been paid.

■■ In this case the defense is defective in two particulars. First, part performance sufficient to satisfy the statute has not been shown. The purchaser did not receive possession. Only a comparatively small part of the purchase price was involved in the materials and labor furnished. The deed was not delivered. There is no evidence to show that the plaintiff knew of, or consented to, the execution and delivery of the deed to the bank; or that there was an escrow agreement between the parties. Hence, the bank was not an escrow holder. The deed was at all times subject to the will of the defendant. This he exercised by conveying the property to another before the commencement of the action. The purported agreement therefore lacked mutuality. Burnham v. Henderson, 47 Idaho 687, 278 P. 221. Second, the contract, so far as plaintiff's evidence goes, is so incomplete and uncertain as to indicate that there was no meeting of the minds of the parties on certain essential elements. Assuming that the recital of the consideration in the deed, annexed to the answer, is sufficient to indicate an agreement on the purchase price, there is no evidence as to the amount of the consideration which was to be rendered in materials and labor, or the amount to be covered by the proceeds of the proposed loan, nor the time when or within which the consideration was to be paid. Neither is there any showing that a loan could be obtained for the unstated amount required to complete the purchase. In short, it appears the supposed agreement remained in the stage of negotiation.

 

 Under the statute of frauds, a non-conforming "agreement is invalid." § 9–505, I.C. To meet its requirements, the essential elements of the agreement cannot rest in parol. Gaskill v. Jacobs, 38 Idaho 795, 225 P. 499.

"The question of forfeiture is not (as many cases within this annotation upholding forfeitures have been disposed to state it) the question whether a vendee by his own default can confer upon himself a cause of action for the return of money paid, 'the other party being ready and willing to perform his part of the contract,' but whether on default by the vendee occurring the vendor may by abandoning all idea of performance or payment become entitled to retain not only the land but also the money paid, without regard to the damages or want of damages sustained from the breach, and just as though the vendee, by defaulting, had become an outlaw without rights in respect of the contract or anything done under it." 31 A.L.R.2d, Annotation, § 1, pp. 9 and 10.

In Graves v. Cupic, 75 Idaho 451, 272 P.2d 1020, this court alined itself with those referred to by the annotator, 31 A.L.R.2d 19, as follows:

"In a minority of American jurisdictions the right of the vendor, in case of default by the vendee, to retain as forfeited money paid on the contract in excess of damages sustained from the breach has been denied. In California, Connecticut, and Utah, a firm rule against forfeiture seems now to be established, supported by opinions which are among the best to be found on the subject and prompted no doubt by the 'Instinctive revolt against making the vendor more than whole.' "

See cases cited in the note, and Young v. Hansen, Utah, 218 P.2d 666, 668; Restatement of the Law, Contracts, §§ 355 and 357.

The judgment is reversed with direction to grant a new trial.

Costs to appellant.

KEETON, PORTER, ANDERSON and SMITH, JJ., concur.