577 P.2d 1153

Roger C. THOMAS and Ida L. Thomas, husband and wife, and Paul M. Thomas and Rose C. Thomas, husband and wife, and First National Bank, in Boulder, Co-Executor of the Estate of Edward S. Filler, Deceased, Plaintiffs-Appellants,

v.

Melvin B. KLEIN and Alta Vilate Klein, husband and wife and Albert T. Brannen and Margaret R. Brannen, husband and wife, and Marie Ann Johnson, a/k/a Marie Hibbard Johnson, a widow, and Edward R. Jackson, a single man, and Florence M. Jackson, a widow, and Maurice V. Klaas and Pearl A. Klaas, husband and wife, and W. A. Freeman and Sylvia Hiller Freeman, husband and wife, and Sylvia Hiller Freeman, a divorced woman, and Jacqueline Hiller, a widow, and John T. Swank and Peggy A. Swank, husband and wife, Defendants-Respondents.

No. 12137.

Supreme Court of Idaho.

April 17, 1978.

Robert Korb, III, of Kneeland, Laggis, Korb & Collier, Ketchum, Gregory L. Williams of Rothgerber, Appel & Powers, Denver, Colo., for plaintiffs-appellants.

Andrew F. James of James, Hobdey & Varin, Gooding, for respondents John T. and Peggy A. Swank.

James L. Kennedy, Jr., of Walker & Kennedy, Twin Falls, for respondent Jacqueline Hiller.

McFADDEN, Justice.

This appeal involves determining the relative rights of vendors and defaulting vendees under an installment land sale contract. Appellants, successors to the vendors' interests, appeal from a judgment of the Fifth Judicial District Court quieting title to the property in the appellants, but subjecting their interests to restitutionary liens totalling $103,423.80 in favor of respondents, successors to the vendees' interests. Reversed and remanded.

The controversy concerns an installment land sale contract, executed in 1957 and modified in 1960, for the purchase of a resort motel complex located near Ketchum, Idaho. The agreement provided for monthly installment payments and for forfeiture of all payments and improvements if the vendees failed to cure defaults of payments within 60 days of notification of the default. The original vendees' interests have been assigned several times, culminating in the assignment to defendants-respondents, John and Peggy Swank. Respondents Swank have been in possession of the property since November, 1969, and in default of payments since July 1, 1972.

In July, 1973, appellants served written notification of the default and in March, 1974, instituted the present action because the default had not been cured. Appellants sought judgment forfeiting the contract, quieting title and transferring possession of the property to them as against all successors to the original vendees' interests. All of these named defendants, except respondents Swank, respondent Hiller and respondent Johnson, have defaulted or have stipulated they do not possess any interest in the property.

After finding that the vendees' default had not been cured within 60 days the trial court forfeited the contract and quieted title in appellants. The trial court however concluded that enforcement of the forfeiture clause would constitute a penalty. To avoid this result, appellants were ordered to pay $103,423.80 to respondents Swank, respondent Hiller and respondent Johnson. These restitutionary judgments were se-

cured by liens against the property. The effect of the trial court's judgment, therefore, was that appellants were restored to possession of the property, but subjected to liens totaling in excess of $100,000.00. No mention was made as to their order of priority. Appellants appeal from this judgment.

■ Actions to forfeit contractual rights of the defaulting party, pursuant to a forfeiture clause, are addressed to the court's equitable discretion. *Graves v. Cupic,* 75 Idaho 451, 272 P.2d 1020 (1954). In such actions, it is within the court's equitable power to decree that the property be sold by judicial sale. *Walker v. Nunnenkamp,* 84 Idaho 485, 373 P.2d 559 (1962).

■ Because of the *particular facts of this case,* it is the conclusion of this court that it was not a proper situation for the trial court to attempt to apply *Graves v. Cupic, supra,* and that a proper exercise of equitable discretion requires that the contract be foreclosed and the property be sold by judicial sale. This result is consistent with the relief requested by appellants in their post-trial brief submitted to the trial court and reiterated by appellants during oral arguments before this court.[1] Such relief is appropriate in light of the uncertainties concerning the property's fair market value and the reasonable rental value of the premises during the period that the vendees were in possession of the property. Additionally, the long length of time lapsed since execution of this contract and the multiplicity of assignments of the vendees' interests, some of which involved installment land sale contracts with similar forfeiture provisions, suggest that judicial sale of the property may be the most equitable resolution of the various competing claims. Significantly, the original vendors are not involved in this action so that the normal situation in forfeiture actions is not here present. Also, the fact that each of the various successors to the original vendees' interests have assigned their interests pursuant to subsidiary contracts makes the normal comparison of actual damages and liquidated damages difficult if not impossible. These factors, combined with the uncertainty of the testimony below, suggest that judicial sale of the property is the equitable course to follow.

This decision is in conformity with our earlier opinion in *Ellis v. Butterfield,* 98 Idaho 644, 570 P.2d 1334 (1977), *aff'd on reh.,* 98 Idaho 663, 572 P.2d 509 (1978), although the remedy here decreed is different. In *Ellis v. Butterfield, supra,* we enforced the parties' contractual forfeiture provision because we found substantial evidence on appeal to support the trial court's finding that retention of payments made under the contract as liquidated damages was not unreasonable or inequitable. However, in the instant case the trial court found that the forfeiture provision was, in effect, an unenforceable penalty. The trial court thus held that the vendees were not bound by the remedy provided by contract, and thus we conclude that judicial sale of the property is the most equitable remedy in this case. The judgment of the trial court is reversed and the cause remanded for judicial sale of the property. The parties shall be allowed to participate in the bidding of the property at the sale, which shall be free and clear of any lien or claim of the parties.

The trial court shall direct that the proceeds of such sale be first applied toward the costs and expenses of the sale and then to satisfy the amount owed appellants, including unpaid principal indebtedness, accrued interest to date, attorney fees and costs of action including this appeal. The balance remaining after payment of these amounts, if any, shall be apportioned among respondents Swank, respondent Hiller and respondent Johnson as the trial court shall find them to be entitled. The trial court shall enter appropriate findings of fact, conclusions of law and judgment in accordance with the resolution of this issue

---

1. Respondent Hiller and Respondent Johnson, in their pleadings, also requested judicial sale of the property.

and may hear such additional evidence as any of the respondents may properly offer.

The judgment of the district court is reversed with directions that the district court fix attorney fees on appeal, and the cause is remanded for further proceedings consistent with this opinion. Costs to appellants.

SHEPARD, C. J., and DONALDSON and BAKES, JJ., concur.

BISTLINE, J., concurs in the result.

BAKES, Justice, concurring specially:

I believe the majority opinion of Justice McFadden properly resolves the issues presented in this case. However, the dissent suggests that the result reached here is inconsistent with our decision in *Ellis v. Butterfield*, 98 Idaho 644, 570 P.2d 1334 (1977). I write to emphasize that the difference in outcome between that case and this one is not due to any variation in the law applied in the two cases, but to a difference between the *facts cognizable on appeal.*

Although in his dissenting opinion Justice Bistline finds this case "essentially indistinguishable" from *Ellis,* this observation reflects a failure to recognize the most significant fact which an appellate court must consider on appeal, i. e., the decision of the trial court. In this regard the two cases were vitally different. In this case the trial court awarded restitutionary relief to the vendees, implicitly finding that without such relief the contractual forfeiture provision would operate as an impermissible penalty. By contrast, the trial court in *Ellis* found, based upon the evidence before it,[1] that the liquidated damage provision of the Ellis-Butterfield contract "is neither inequitable nor unreasonable." *See Ellis v. But-*

*terfield,* 98 Idaho at 649, n. 5, 570 P.2d at 1339, n. 5. In effect, the trial court found that the clause was a reasonable approximation of the vendor's damages and therefore was not an unenforceable penalty. Both in *Ellis* and in the case now before us the findings of the trial court were supported by substantial evidence. In neither case could it be said that the findings made below were clearly erroneous, the standard for reversal established by I.R.C.P. 52(a). Therefore, from the vantage point of an appellate court, these two cases were factually very different, and to find them to be "essentially indistinguishable" is, in effect, to retry them on appeal.

Although Justice Bistline's dissenting opinions in *Ellis* and in this case purport to attack the rule of law applied in *Ellis,* what they are actually doing is retrying the facts in the *Ellis* case. In so doing, they violate the long standing rule that findings of the trial court which are supported by substantial evidence will be upheld on appeal regardless of what the appellate court might think the result ought to have been.

"It has long been the settled rule of this Court that where the findings of the trial court are supported by substantial and competent, though conflicting, evidence, such findings will not be disturbed on appeal. *Riley v. Larson,* 91 Idaho 831, 432 P.2d 775 (1967); *Meridian Bowling Lanes, Inc. v. Brown,* 90 Idaho 403, 412 P.2d 586 (1966); I.R.C.P. 52(a); *Jones v. Big Lost River Irrigation District,* 93 Idaho 227, 459 P.2d 1009 (1969). The trial judge is the arbiter of conflicting evidence; his determination of the weight, credibility, inferences and implications thereof is not to be supplanted by this Court's impressions or conclusions from the written record. *Meridian Bowling Lanes, Inc. v. Brown, supra.*" *Thompson*

---

1. Not all of the facts relied upon by the dissenting opinion in *Ellis* were the result of evidence admitted or stipulated at trial. In fact, no witnesses appeared for the vendee-Ellises at the trial. Their proof consisted of eight exhibits (A through H) which the parties agreed constituted their proof. The vendor was the only witness for the defense and he testified only that the value of the property "as of now" (the date

of trial) was $20,000, an increase of only $2,768 since the inception of the contract 7½ years before. The $15,000 of principal and interest which the vendees paid during the contract, when compared to the 7½ years (90 months) of possession which they had enjoyed up to the time of trial, would have constituted less than $200 per month rental—not an unreasonable amount, as the trial court found.

*v. Fairchild,* 93 Idaho 584, 587, 468 P.2d 316, 319 (1970).

The generally accepted scope of appellate review with respect to a trial court's findings of fact was described well by Judge Sanborn in *Cleo Syrup Corp. v. Coca-Cola Co.:*

> "This Court, upon review, will not retry issues of fact or substitute its judgment with respect to such issues for that of the trial court. [Citations omitted.] The power of a trial court to decide doubtful issues of fact is not limited to deciding them correctly. [Citations omitted.] In a non-jury case, this Court may not set aside a finding of fact of a trial court unless there is no substantial evidence to sustain it, unless it is against the clear weight of the evidence, or unless it was induced by an erroneous view of the law. [Citations omitted.]" 139 F.2d 416, 417–18 (8th Cir. 1943), *cert. denied,* 321 U.S. 781, 64 S.Ct. 638, 88 L.Ed. 1074 (1944), *quoted in* 5A Moore's Federal Practice ¶ 52.03[1], at 2621–22 (2d ed. 1948).

It is well to remember that although "trial judges may be mistaken as to facts, appellate judges are not always omnicient." *Orvis v. Higgins,* 180 F.2d 537, 542 (2d Cir. 1950) (Chase, J., dissenting). Too frequently this truth has been overlooked by this Court. *See, e. g., Jenkins v. Agri-Lines Corp.,* —— Idaho ——, —— P.2d —— (1978) (Bakes, J., dissenting), *petition for rehearing granted* April 20, 1978; *Lyons v. Industrial Special Indem. Fund,* 98 Idaho 403, 565 P.2d 1360 (1977) (Bakes, J., dissenting). The dissenting opinion in this case adds impetus to this unfortunate trend.

BISTLINE, Justice, concurring in the result and dissenting.

For the reasons stated in my dissent in *Ellis v. Butterfield,* 98 Idaho 644, 570 P.2d 1334 (1977), a case essentially indistinguishable from the one at bar, I concur in the Court's opinion today and applaud the recognition it accords to *Walker v. Nunnenkamp,* 84 Idaho 485, 373 P.2d 559 (1962). However, I do not subscribe at all to the statement that the decision announced today is in conformity with the *Ellis* decision which decreed the judicial enforcement of a forfeiture. Mr. and Mrs. Ellis, probably by now dispossessed, for certain will be the first to recognize that the dispositions of the two cases are poles apart.

The bench and bar are bound to be confused by today's majority opinion which denies forfeiture, directs a judicial sale, and at the same time insists that it is in conformity with *Ellis.* The close factual similarity of the two cases needs to be noted. In *Ellis,* at the time of default, the vendees had paid $8,124.00 of principal on a total contract of $17,232.00, approximately 47% of the total price. In addition, they had paid the vendors almost $7,000.00 of interest and a good share of the real property taxes. The default in *Thomas* occurred on a larger scale, but in similar proportions. There, $97,000.00 had been paid on a purchase price of $160,000.00, approximately 60% of the total principal. Interest payments were near $60,000.00. In both cases, the record, as could be expected, indicated that the property in question had appreciated significantly over the years of the contract payments, either because of improvements made by the vendees or because of inflationary factors at work in the contemporary real estate market. Indeed, the *Ellis* case presented yet stronger equities in favor of the vendees. There, the vendees were six days late in complying with the demand of the default notice, but the fact is they did comply. When their tender of back payments was refused, they sought out and secured financing with which they tendered the full contract balance. That, too, was refused. Here, by contrast, the vendees never did tender the arrearages, nor did they at any time tender the full contract balance.

In both cases, the vendors asked for judicial enforcement of forfeiture, based upon a violation of the familiar contract provision making time of the essence in curing a default. In both cases, the vendees pleaded that such a forfeiture would be unjust, inequitable and unconscionable. The net result of the judicial process is that the *Ellis* vendors are awarded a judicial forfeiture

which allows them to keep all back payments and obtain clear title to the property at its present market value. The *Thomas* vendors by contrast are awarded the remedy of judicial sale which allows them no more than that for which they bargained, namely, the total purchase price for which the property was originally sold. Ironically, it was exactly such a remedy that the *Ellis* vendees offered to their vendors without all the delay and expense of a lawsuit and an appeal. How are the members of the trial bench and bar to understand such highly disparate results?[1]

## I.

Perhaps the answer is to be found in the following language from today's majority opinion:

Actions to forfeit contractual rights of the defaulting party, pursuant to a forfeiture clause, are addressed to the court's equitable discretion. *Graves v. Cupic*, 75 Idaho 451, 272 P.2d 1020 (1954).

The actual language from *Graves v. Cupic*, however, is significantly different:

Equity will not grant specific performance of a forfeiture unless the failure to do so would lead to an unconscionable result.[2]

The difference is all-important. In this jurisdiction, by virtue of the doctrine of *Graves v. Cupic*, the exercise of judicial

discretion to enforce contractual forfeiture provisions is presumptively impermissible. In neither *Thomas* nor *Ellis* did the vendors attempt to show that failure to enforce the forfeiture provision would lead to an "unconscionable result."

The unanimous Court in *Graves v. Cupic* made this further statement, supported by 1 Restatement of the Law, Contracts, § 339:

Generally speaking, parties to a contract may agree upon liquidated damages in anticipation of a breach, in any case where the circumstances are such that accurate determination of the damages would be difficult or impossible, and provided that the liquidated damages fixed by the contract bear a reasonable relation to the actual damages. But, where the forfeiture or damage fixed by the contract is arbitrary and bears no reasonable relation to the anticipated damage, and is exorbitant and unconscionable, it is regarded as a "penalty", and the contractual provision therefor is void and unenforceable.

*Id.* 75 Idaho at 456, 272 P.2d at 1023. With this admonition in mind, the Court examined the contract in that case, and held as a matter of law that

Here the damages stipulated for by the parties is clearly unconscionable, and exorbitant. It is arbitrary and bears no reasonable relation to the damages which

---

1. Justice Bakes, in his concurring opinion, finds today's case distinguishable from *Ellis* because here "the trial court awarded restitutionary relief to the vendees" on the grounds that enforcement of the forfeiture clause would have been an "impermissible penalty," whereas in *Ellis* the trial court enforced the forfeiture because he found it was not a penalty. I would have thought that when two trial courts, on *essentially* indistinguishable facts, reach opposite conclusions as to equitable relief granted or withheld, it is precisely the role of an appellate court to resolve the resulting conflict. Far from manifesting a desire to retry the facts of cases decided below, such a practice serves to give badly needed guidance to bench and bar alike in what has suddenly become a very unsettled area of the law in Idaho.

2. The Court in *Graves v. Cupic* reaffirmed what it had stated 25 years earlier in *Sullivan v. Burcaw*, 35 Idaho 755, 208 P. 841 (1922), where

it approved the general rule, as stated in Pomeroy's Equity Jurisprudence:

"[T]hat a court of equity will not interfere on behalf of the party entitled thereto, and enforce a forfeiture, but will leave him to his legal remedies, if any, even though the case might be one in which no equitable relief would be given to the defaulting party against the forfeiture.' (1 Pomeroy's Equity Jurisprudence, 4th ed., sec. 459, pp. 870, 871.)"

*Sullivan v. Burcaw. Id.* at 762, 208 P. at 843. As the exception to the general rule, the Court also stated, from the language of Mr. Justice Van Devanter in *Brewster v. Lanyon Zinc Co.*, 8 Cir., 140 F. 801, 72 C.C.A. 213 (1905), that, "there is no insuperable objection to the enforcement of a forfeiture when that is more consonant with the principles of right, justice, and morality than to withhold equitable relief." *Id.* 35 Idaho at 762, 208 P. at 843.

the parties could have anticipated from the breach which occurred. Hence, the provision is for a penalty and is unenforceable.

*Id.* at 459, 272 P.2d at 1025. Having concluded that the stipulation for damages resulted in an unenforceable penalty, the other proposition was self-proving, *i. e.*, obviously the vendors could not show that a failure to grant forfeiture would be unconscionable.

What must be kept in mind in reviewing these cases is that even though the contractual provision is not as a matter of law invalid on its face, that is to say, even though the provision is allowed to remain a part of the contract, equity will still refuse to grant forfeiture unless and until it is established that failure to do so produces an unconscionable result. That, I say, is the plain, clear, succinct, and unequivocal holding of *Graves v. Cupic.* I am pleased that the majority has apparently embraced it once again.

## II.

Unfortunately, the majority's own understanding of what it accomplishes in today's opinion is limited to "the particular facts of this case." Following on the heels of *Ellis v. Butterfield*, such a ruling, I submit, gives zero guidance to the trial bench as to what the law is in Idaho, and leaves practitioners in an untenable and unenviable position while advising clients.

The trial judge in this case was obviously trying to award actual damages, in conformity with his understanding of the remedy applied in *Graves v. Cupic.* The majority opinion, in essence, holds that such a remedy is not proper given the particular facts of this case. The reason why it is not

proper is not made clear. When a trial court is reversed, it is the responsibility of this Court to provide guidance for dealing with future cases.

As noted above, *Graves v. Cupic* laid down the general rules that, in Idaho, equity will not generally enforce a contractual provision for forfeiture and that even when such a provision is robed as "liquidated damages," it will not be enforced where it is in reality a penalty.[3] What is frequently misunderstood, however, is that these general rules do not dictate a single remedy for every situation. The harness must be made to fit each particular horse. In *Graves v. Cupic* itself only the original vendor and vendee were parties to the suit. The vendee had made a $14,500.00 down payment on a $50,000.00 contract only to find out shortly thereafter that she did not qualify for a liquor license which was necessary in running the operation. Since only the original vendor and vendee were involved, since the default occurred only months after the contract was formed, since the vendee's down payment was grossly disproportionate to the vendor's damages, and since the vendee had no desire or resources with which to redeem her equity in the property, the proper equitable remedy was restitution. The Court therefore decreed a return of the vendee's down payment, less actual damages (rental and costs) to the vendors.

It was soon seen that the result can only be confusion if a court of equity mechanically fashions the identical remedy for completely different cases. The lesson of *Walker v. Nunnenkamp, supra,* is that a court of equity has many different remedies at its disposal in applying the general equitable principles of *Graves v. Cupic* to particular situations. Unfortunately, that lesson has not always been remembered or uniformly applied by this Court.[4]

---

3. Less than one year after *Graves v. Cupic* was handed down, this Court quoted approvingly from 31 A.L.R.2d, Annot., § 1, at 9–10, for the proposition that Idaho had *not* aligned itself with those jurisdictions which hold that a "vendee, by defaulting, had become an outlaw without rights in respect of the contract or

anything done under it." *Raff v. Baird*, 76 Idaho 422, 427, 283 P.2d 927, 930 (1955).

4. A prime example of improper application of a restitutionary remedy is to be found in *Howard v. Bar Bell Land & Cattle Co.*, 81 Idaho 189, 340 P.2d 103 (1959). That case was relied upon heavily by the majority in *Ellis v. Butterfield*

The opinion of the Court today alludes briefly to the "multiplicity of assignments of vendees' interests," and the fact that "the original vendors are not involved," and suggests that judicial sale is therefore the "most equitable resolution." I concur. Judicial sale *is* equitable and it is a solution, for this and all cases where multiple assignments of the contract have occurred, where substantial equity has been built up or where the property has changed radically in value since the time of purchase.

In short, the Court cannot in this case, or any case like this, give the restitutionary relief which was directed in *Graves v. Cupic.* The simple reason is that the original vendors who here received the down payment of over $40,000.00 are not parties to the action. Those vendors sold their paper and are entirely out of the present litigation. In that posture, it would certainly be aₙ remarkable proposition of law or equity for a court to hold the Thomases, assignees of the original vendors, accountable for monies which they never received, *i. e.,* the $40,000.00 down payment and four years' worth of interest and principal payments which were paid into the hands of the original vendors. Nonetheless, such a result would follow from blind application of the *Graves v. Cupic* restitutionary formula to the facts of this case. Any such result would quickly put an end to the practice of making real estate time transactions an affair of contracts.

The trial judge did his best to apply the restitutionary remedy of *Graves v. Cupic,* but such is simply unworkable where the original vendors have taken a sizable down

payment from the vendees and are now long gone. Many of the vendees in turn became intermediate vendors—selling to new purchasers.[5] The only remedy which can and should be applied—not just in this case but in all such cases—is to treat a seasoned contract as that which it really is, a security device. And, just as mortgages are foreclosed and the property sold, so be it with a contract vendee's interest. Such was the approach I advocated in *Ellis* in language strikingly similar to that *now* adopted by the Court in this case:

> Primarily, though, I have always been of the view that in nearly all of these contract cases, where there has been performance over a number of years, and in many instances assignments by both the original vendors and vendees, and second and third assignments, the only practical solution, and a just one, is that equity settle the matter by a judicial sale. *Walker v. Nunnenkamp, supra,* is not only sound authority for those propositions for which I previously cited it, but in recognizing these contract-forfeiture cases as being "controlled entirely by equitable principles," went on to hold that "the court in its wisdom may deem it proper and equitable to direct a judicial sale of the property involved." *Walker,* 84 Idaho at 498–9, 373 P.2d at 568. Generally, when fairness and the equities of a case so dictate, courts have the *inherent power* to order that property subject to an installment land sale contract be sold by judicial sale. III American Law of Property, § 11.74 (1952); *Blondell v. Beam,* 243 Or. 293, 413 P.2d 397 (1966) (significant appreciation in value and

despite the fact that the cases were completely dissimilar on their own facts and despite the fact that *Howard* had been superseded by the far more extensive treatment in *Walker v. Nunnenkamp, supra.* Unlike *Ellis,* the Court in *Howard* was faced with a situation involving multiple assignments of the contract, a far more extended period of default, a tender by one who was not a party to any of the contracts at all, and a dispute with the interloping party over timber rights. As the Court in *Ellis* acknowledged but declined to follow, the *Howard* Court imposed a restitutionary remedy on the complex fact pattern of that case. For the reasons given in the text, a restitutionary reme-

dy will almost never be appropriate under such circumstances and such cases should be disapproved.

5. The multiple assignments involved in this case resulted in an apparent anomaly. As Judge Kramer so nicely put it:

"Among the fascinating problems in this lawsuit is the fact that each of the parties asks the Court to award it more money than they have invested or would have received if the contracts had been performed." Obviously, the parties cannot be so accommodated.

small unpaid contract balance remaining on contract indebtedness); *Henderson v. Morey*, 241 Or. 164, 405 P.2d 359 (1965) (sale proceeds will exceed unpaid contract balance). Time still remains for the Court to instruct the trial court that if it be found that, because of insufficient or inconclusive evidence, it is unable to accurately determine damages or *for any other equitable* reason find judicial sale more appropriate, a judicial sale should be ordered. (Emphasis in original.)

*Ellis v. Butterfield*, 98 Idaho 663, 572 P.2d 509, 510 (1978).

### III.

Justice Bakes wrote for the majority in *Ellis*:

An installment land sale contract is . . in essence, a hybrid composed of property law concepts on the one hand and contract law on the other.

98 Idaho at 646, 570 P.2d at 1336. The proposition is correct. A real estate transaction, notwithstanding its embodiment in an executory contract, remains a transaction in which a buyer acquires an equity in real property. With a degree of assurance which flows from having been involved in *Graves v. Cupic*, and having assiduously followed all such cases since then, and being of counsel in some of those, I conclude by emphasizing the evolution of the case law in this "hybrid" field. For many years prior to *Graves v. Cupic*, the district courts of this state more times than not brought down the gavel against defaulting purchasers with the same litany which the Court used in *Ellis*: "A contract is a contract. Miss your payment, fail to comply with the default, and your contract, by the very language therein, which you signed, is forfeited, along with any equity in the property, and improvements you may have made."

Some district courts, however, were familiar with the principle that: "Equity abhors a forfeiture." Accordingly there were some property contract cases where forfeitures, called forfeitures, were not enforced. This brought vendors to avoid using such terminology, and forfeitures were disguised

as "contractual provisions for liquidated damages." Buyers in default of such cleverly worded documents were regularly turned out because such provisions were part of the contracts which they had signed. After all, "a contract is a contract."

This Court changed all that in *Graves v. Cupic*. In doing so, it took a two-fisted stance against forfeitures, as a matter of *contract* (but not yet property) law. In essence, the Court plainly said: "Put in your contracts provisions for forfeitures. But, the rule remains that forfeiture is a remedy allowable not at law, but in equity, and equity will not specifically enforce a forfeiture unless the failure to do so would lead to an unconscionable result. Call forfeiture provisions by a different name if you will. No matter. The courts will examine such a contractual provision and, where they see that what the parties have denominated 'liquidated damages' are not such in reality, and fail to bear a reasonable relation to damages which the parties on entering into the contract might have anticipated, such contractual provision will be treated as a penalty, *i. e.*, the forfeiture which it really is. The court, in equity, will not specifically enforce such a provision." That is the teaching of *Graves v. Cupic*. As the same Court was to remark a year later in *Raff v. Baird, supra*,

In *Graves v. Cupic*, 75 Idaho 451, 272 P.2d 1020, this court aligned itself with those referred to by the annotator, 31 A.L.R.2d 19, as follows:

"In a majority of American jurisdictions the right of the vendor, in case of default by the vendee, to retain as forfeited money paid on the contract in excess of damages sustained from the breach has been denied. In California, Connecticut, and Utah, a firm rule against forfeiture seems now to be established, supported by opinions which are among the best to be found on the subject and prompted no doubt by the 'Instinctive revolt against making the vendor more than whole.'"

76 Idaho at 427, 283 P.2d at 930.

What has not been generally noted is that the *Graves v. Cupic* principle of piercing the "liquidated damages" contractual provision

required no evidence of actual damages. None was produced in that case. Rather, the determination that the contractual provision was in fact a penalty was made on the face of the contract, *i. e.*, the amount of the $14,500.00 down payment compared to the $50,000.00 purchase price. The Court there noted various other proportions which had been so held to be a penalty, in cases mainly from Utah and California.

Then, 7 years later in *Walker v. Nunnenkamp*, in denying the petition for rehearing, the Court expanded the concept so that defaulting buyers could show that a contractual provision calling for retention as "liquidated damages" of all sums paid, plus improvements, plus appreciated values may also constitute a "penalty":

> The rule that equity will not enforce a penalty is applicable to *any* action upon a real estate contract where the ultimate results involves the enforcement of a penalty. (Emphasis added.)

84 Idaho at 492, 373 P.2d at 563.

Where the Court in *Walker v. Nunnenkamp* at first merely expanded the protections for a defaulting purchaser on the *contract* law side of this "hybrid," it then in the closing opinion declared for the first time that real estate transactions should be treated as real property transactions, and proper relief, of different types, accorded much the same as prevails in the law of real estate mortgages.

In *Ellis*, the Court focused solely upon contractual form while blinding itself to substantive real estate rights and the realities of the world in which they exist. I concur in the result of today's majority opinion because it once again recognizes those rights and those realities. I cannot concur in the majority's attempt to distinguish *Ellis*. That case should be overruled.[6]

---

6. The *Ellis* decision has already been accorded some of the distinction to which it is rightfully destined. In an article in the October, 1977, issue of the Brigham Young University Law Review, published by the J. Reuben Clark Law School, entitled The Installment Land Contract—A National Viewpoint, *Ellis* was the *only* contemporary case cited as supportive of the statement that, "forfeitures are still occasionally judicially enforced, . . ." I submit that that article fully bears out my earlier forecast that *Ellis* was indeed a giant step backwards.